## UNDERWOOD v BELLEFONTAINE (City) et

Ohio Appeals, 3rd Dist, Logan Co.

No. 860. Decided Dec. 18, 1939

Hover & Smith, Bellefontaine; Elmer E. Welty, Lima, for plaintiff-appellee.

George S. Middleton, Bellefontaine; Ernest Thompson, Bellefontaine, for defendants-appellants.

## OPINION

By GUERNSEY, J.

This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Logan County, Ohio. By agreement of the parties it is

submitted to this court upon a transcript of the evidence taken in the Common Pleas Court.

The action is brought by Clay Underwood, a taxpayer, on behalf of the City of Bellefontaine, Logan County, Ohio, as plaintiff against the City of Bellefontaine, Logan County, Ohio; John W. Hughes, Mayor of the City of Bellefontaine; John W. Thatcher, Director of Public Service and Safety of the City of Bellefontaine; Howard A. Traul, Orin K. Hileker and Kenneth Corwin, members of the Civil Service Commission of the City of Bellefontaine, Logan County, Ohio; A. D. Paden, Robert Mitchell, Harold Weimer, Truman Dille and John Yoder.

The purpose of the action is to declare void, certifications made by the Civil Service Commission to the appointing authority of the city of certain of the defendants, not made parties defendant in their official capacity, for appointment to certain positions respectively, in the police and fire departments of the city, newly created by resolutions duly adopted by the council and approved by the mayor of the city, as the results of promotional examinations held and conducted by the Commission for said positions respectively, and to declare void, appointments of such persons to said positions by the appointing authority on such certifications; and to enjoin the appointing authority from making such appointments, and such persons respectively, from accepting said appointments and discharging the duties of and drawing salary for services performed or to be performed by them respectively in the respective positions for which they have been certified or to which they have been or may be appointed.

The plaintiff bases his claim for relief, on the following alleged grounds:

1. Failure of the Commission to give notice of the time and place of such promotional examinations, as required by law.

2. Failure of the Commission to put into effect rules for maintaining and keeping records of the efficiency of the officers and employees.

3. Abuse of discretion on the part of the Commission in failure to give proper gradings as a part of the maximum mark allowable for efficiency and seniority in service in the promotional examinations conducted by it.

The plaintiff makes no claim of fraud or collusion on the part of any of the defendants.

As shown by the minutes of the Civil Service Commission which are in evidence, the Commission met on the evening of February 23, 1939, for the drawing of questions for promotional examinations in the departments of fire and police, as ordered by the Director of Public Service and Safety, at which time questions were drawn for the positions of Chief of the Fire Department and Captain of the Police Department. It is also disclosed by the minutes of said meeting that the Commission set Monday, March 13, 1939, as the time, and the city fire department building as the place for holding such examinations, and provided that applicants for examination as Fire Chief must have five years service, and applicants for the examination for Captain of Police must have three years service. The minutes of the meeting further recite that proper advertising was drawn up and gotten out as required by law.

The minute book of the Commission further discloses that on February 28, 1939, the Commission met for the drawing up of questions for the promotional examinations for the department of police and fire as asked by the Director of Public Service and Safety, and that at the meeting questions were drawn for the positions of Lieutenant of City Police, Marshal of the Fire Department and Assistant Marshal of the Fire Department, and March 15, 1939, was set as the time, and the city fire department building as the place for the ex-

aminations for Lieutenant of Police and for Marshal of the Fire Department, and March 17, 1939, as the time and the city fire department building as the place for the examination of Assistant Marshal. The minutes further recite that advertising was drawn up and gotten out as required by law. The minutes of the meeting further disclose that the Commission set the eligible age for Lieutenant of Police two years seniority, for Fire Marshal, three years, and for Assistant Marshal, two years seniority.

The minutes of the Commission under date of March 13, 1939, disclose that the Commission met in regular session in the city fire department for the holding of examinations for the position of Chief of the Fire Department and Captain of the Police Department, and that the following eligible persons took the examination for Chief of the Fire Department, to-wit: Harold K. Weimer, W. M. Hildreth, John D. Yoder and Ray Boone; and that the following persons who were eligible took the examination for Captain of the Police Department, to-wit: Sam Hostettler, A. D. Paden.

Under date of March 19, 1939, the minutes of the Commission disclose that it met in regular session in the city fire department building for the holding of examinations for the positions of Marshal of the Fire Department and Lieutenant of the Police Department, and that the following who were eligible took the examination for Marshal of the Fire Department, to-wit: Harold Weimer, John D. Yoder, T. D. Dille and Ray Boone. The minutes also disclose that the following who were eligible took the examination for Lieutenant of the Police Department, to-wit: Robert Mitchell and A. D. Paden.

Under date of March 17, 1939, the minutes show that the Commission met in the city fire department building for the holding of examination for the position of Assistant Marshal of the Fire Department, and that the following who were eligible took the examination,

to-wit: Harold K. Weimer, John D. Yoder, T. D. Dille, Ray Boone. And that March 22, 1939 was set for the starting of the grading of examination papers in the office of Howard Traul.

The minutes under date of March 22, 1939, disclose that the Commission met in regular session in the office of Howard Traul for the grading of examination papers for the positions of Captain of the Police Department and Lieutenant of the Police Department, and that such grading resulted as follows:

Captain of Police.

1. Al D. Paden 68 plus 3 seniority and 5 conduct and capacity—76%.
2. Sam Hostettler. 38 plus 10 seniority, and 5 conduct and capacity—53%.

Lieutenant of Police.

1. Al D. Paden, 81 plus 3 seniority, and 5 conduct and capacity—89%.
2. Robert Mitchell, 59 plus 6 seniority, 5 conduct and capacity—70%.

The minutes further show that the high grade, in accordance with law relating to promotional examinations was submitted to the Director of Public Service-Safety. It further appears from the minutes that the evening of March 23, 1939, was set for the grading of papers.

The minutes of the Commission under date of March 23, 1939, disclose that the Commission met on the night of this day in regular session for the grading of examination papers for the positions of Chief and Marshal of the Fire Department, and that such grading resulted as follows:

Chief of City Fire Department.

1. Harold K. Weimer, 73 plus 6, seniority plus 5 conduct and capacity—84%.
2. William Hildreth, 57 plus 10, seniority plus 5 conduct and capacity—72%.

3. John Yoder, 58 plus 5, seniority plus 5, conduct and capacity—68%.

4. Ray Boone, 56 plus 7, seniority plus 5 conduct and capacity—68%.

Marshal of City Fire Department.

1. Truman Dille, 86 plus 3 seniority plus 5 conduct and capacity—94%.

2. Harold Weimer, 76 plus 6 seniority plus 5 conduct and capacity—87%.

3. Ray Boone, 68 plus 7 seniority plus 5 conduct and capacity—80%.

4. John Yoder, 68½ plus 5 seniority plus 5 conduct and capacity—78½%.

The minutes further disclose that the high single grade for each position was submitted to the Director of Public Service-Safety, and that the evening of March 24th was set for the further grading of papers.

The minutes of March 24, 1939, disclose that the Commission met in regular session on this date for the grading of examination papers for the position of Assistant Marshall of the Fire Department, and that such grading resulted as follows:

1. Harold Weimer, 81 plus 6 seniority plus 5 conduct and capacity—92%.

2. Truman Dille, 83 plus 3 seniority plus 5 conduct and capacity—91%.

3. John Yoder, 76 plus 5 seniority plus 5 conduct and capacity—86%.

4. Ray Boone, 70 plus 7 seniority plus 5 conduct and capacity—82%.

The minutes further disclose that the high grade was submitted to the Director of Public Service-Safety in accordance with law.

The minutes under date of April 5, 1939, disclose that the Commission met in special session and that the minutes of the meetings held by the Commission February 23, February 28, March 13, March 15, March 17, March 22, March 23 and March 24, 1939, were read by the secretary, and that Mr. Hileker, a member of the Commission, objected to the minutes as read for the meeting of February 23, 1939, as said minutes failed to record the action of the Board duly taken at said meeting, and moved that they be corrected as follows:

"That notice of the holding of promotional examinations for Chief of the Fire Department, Marshal of the Fire Police Department and Lieutenant of Department and Assistant Marshall of the Fire Department; Captain of the the Police Department should be given by a bulletin posted in not less than two public places and for all other examinations in the classified service, other than promotional, notice be given by bulletin being posted in not less than five public places, of the time and place of holding said examination; and that in determining the final grade of those who take promotional examinations, said grade be determined by giving to each person taking an examination, the grade they attained in the written test plus not more than ten points for seniority in service and not more than ten points for conduct and capacity in office." This motion was duly seconded, and on roll call all members voted yea; and thereupon the minutes of the February 23rd meeting were corrected, and the minutes of the February 23rd, February 28th, March 13th, March 15th, March 17th, March 22nd, March 23rd, and March 24th, 1939, meetings were approved.

It is further disclosed by the evidence that no notice of the action by publication in a newspaper, of any of the promotional examinations involved in this action which were held on the dates above mentioned was given, and that for the examinations for Chief, Marshal and Assistant Marshal of the Fire Department typewritten notices were posted in two places only, to-wit: the fire department and the city building.

The evidence further discloses that the notice given for the examination of Captain and Lieutenant of the Police Department was typewritten and post-

ed in the fire department and city building only.

The evidence further discloses that the President of the Civil Service Commission posted such notices in the fire department and city building at the places where notices were usually posted and that both of the notices concerning the examinations for Captain and Lieutenant of the Police Department were the only notices given, and that the notice originally posted for the examination of Captain of the Police Department required a service record of not less than five years for applicants for examination, and that some time before the examinations and after the notices had been posted, the notice posted in the city building was changed by the President of the Commission by writing the word "three" above the word "five", and by changing the figure "5" to the figure "3" with a pen; and that the notice posted in the city building so changed stood throughout the period until the examinations were held, but that the notice posted in the fire department remained, stating a requirement of five years service to be eligible for examination for the position, during the entire period from the time the notice was posted until the examinations were held.

It further appears from the evidence that the notices of the examinations were all posted more than two weeks prior to the dates of the respective examinations and that every member of the police department eligible to take the examinations appeared at the time and place designated in the notices, and took the examinations.

There is no evidence that any person eligible to take the promotional examinations in either the police or fire department failed to have actual notice through such postings, of the time and place of holding such examinations.

It further appears from the evidence that the Civil Service Commission had at no time provided in its rules for the keeping and maintaining of a record of efficiency for each employee in the classified service, but that prior to the promotional examinations mentioned it asked for and secured from the Public Service-Safety Director, and has kept in its files, a separate written report as to the conduct and capacity in office and seniority of each person in the classified service in the Police and Fire Departments.

It further appears from the evidence that Samuel Hostetler one of the applicants for examination for Captain of Police, had a total of seventeen years service, while the other applicant, Al D. Paden, had a total of three years service, and that the Commission in grading the applicants taking the examination allowed Hostetler a total of ten points for seniority and allowed Paden a total of three points for seniority.

We will now consider plaintiff's grounds for relief in the order they are hereinbefore set forth.

There are no statutory provisions specifically applying to the giving of notices of examinations by a municipal civil service commission but §486-19, GC provides that a municipal civil service commission shall have and exercise all other powers and perform all other duties with respect to the civil service of such city as prescribed and conferred by Chapter A, Division II, Title III, Part First, of the General Code, comprising §§486-1a to 486-31, GC, upon the state Civil Service Commission with respect to the civil service of the state. Sec. 486-10, GC, which in terms is applicable to the state Civil Service Commission and by the provision above mentioned is made applicable to municipal civil service commissions, ▇▇▇▇ ▇ among other things provides, "reasonable notice of the time and place and general scope of every competitive examination for appointment to a position in the civil service, except as otherwise provided in this act, shall be given by the commission." Sec. 486-15, GC, among other

things provides that all examinations for promotion shall be competitive. Under these provisions a municipal civil service commission is re- quired to give reasonable notice of the time and place and general scope of every competitive promotional examination for appointment to a position in the civil service of the city. It will be noted that there is no specific requirement that the notices be published. **Sec. 4228 GC**, provides in part that unless otherwise specifically directed by statute, all municipal ordinances, resolutions, statements, orders, proclamations, notices and reports, required by law or ordinance to be published shall be published in newspapers as therein provided.

These provisions by their terms apply specifically to notices required by law or ordinance to be published, and inferentially recognize the existence of two types of notices, those required by law or ordinance to be published, and those not required by law or ordinance to be published.

In its broad sense the word "published" means to make public announcement of; to make known to people in general; to divulge, to dis- seminate; but in its more restricted sense it means to make public in a newspaper, book, circular, or the like. Webster's New International Dictionary, Second Edition.

In the broad sense of the word "published", all notices by their very nature, to be effective as notices must be published but if the word "published" had been used in the statutory provisions mentioned with this meaning it would make the phrase "required by law or ordinance to be published", as applied to notices, wholly meaningless.

It is an elementary rule of construction that effect must be given if pos- sible, to every word, clause and sentence of a statute.

Lewis-Sutherland Statutory Construction, Second Edition, Volume 2, page 734.

Applying this rule of construction and giving effect to the phrase "required by law or ordinance to be published" it is clear that the word "published" as used in the provisions of §4228, GC, is used in its more restricted sense as meaning to make public in a newspaper, book, circular or the like, and that the provisions of this section are applicable only to notices where there is a requirement of law or ordinance that the same be made public in a newspaper, book, circular or the like.

The only requirement of notices of civil service examinations is that reasonable notice be given, and consequently the provisions of §4228 GC, are inapplicable thereto, and publication of such notice in the manner provided in said section is not essential to the validity of such notice.

In an opinion of the Attorney General of Ohio, rendered to the Bureau of Inspection and Supervision of Public Offices, under date of October 5, 1919, Volume 2, O. A. G., 1919, page 1247, presumably with reference to the question whether a charge for publication of a notice of an examination by a municipal civil service commission in a newspaper is a legal charge, the attorney general reaches the conclusion that it is a legal charge, but there is some reasoning in his opinion that is in apparent conflict with the conclusion we have reached, as above set forth. We are in accord with the conclusion reached by the attorney general insofar as it may be considered as holding that such charge may be a legal charge when a municipal civil service commission in the exercise of its sound discretion to give reasonable notice of the examination, causes such publication to

be made; but we are not in accord with the reasoning of the opinion indicating that such publication is mandatory. In his reasoning in this opinion the attorney general wholly fails to give effect to the phrase **"required by law or ordinance to be published"** as descriptive of the notices coming within the purview of §4228 GC, and by reason of such failure his reasoning insofar as he indicates that such publication is mandatory is concerned, is erroneous.

While the municipal civil service commission in the instant case failed to adopt any rule as to the time notices of examinations should be posted, the evidence shows conclusively that such notices were in each instance posted more than two weeks preceding each examination.

Under the provisions of §486-15 GC, the Commission was vested with discretion to determine both the time and manner of notice within the limits of reason. There is nothing in the evidence tending to prove that either the time or manner of notice put in effect by the Commission was unreasonable. Nor can it be maintained that the correction of one notice and the failure to correct the other notice with reference to eligibility requirements for the examinations for positions in the police department render such notices invalid, as it conclusively appears from the evidence that all persons who were eligible were applicants for and took the examination and no one was misled by such variances in the notices. Nor is there any other respect in which it appears that the notices given of such examinations by the Commission did not constitute reasonable notices within the meaning of §486-10 GC.

The first ground for relief of the plaintiff is therefore without merit.

2. **Sec. 486-9 GC,** among other things, provides that as soon as practicable after the taking effect of this act (§§486-1 to 486-31 GC) the Commission shall put in effect rules for maintaining and keeping records of the efficiency of officers and employees in accordance with the provisions of this act, and §486-15 GC, in part provides the Commission shall provide in its rules for keeping a record of efficiency for each employee in the classified service. Sec. 486-18 was a part of the original act in which the above sections appeared and contained elaborate and detailed provisions for the making and keeping of such records, and it is upon the provisions of this section that the decision in the case of **Tiernan v Cincinnati, Ohio Decisions, Vol. 28, p. 587,** is based. This section was repealed effective August 2, 1931, and since that time the only statutory provisions with reference to the subject matter of rules of the character mentioned are those contained in §§486-9 **and 486-15, GC,** above mentioned.

There being no statutory provision with reference to making and keeping such records full power is conferred on the Commission under §§486-9 **and 486-15 GC,** to provide in its rules for the keeping of records of efficiency for each employee in the classified service by the Commission or by the heads of the various departments or other suitable persons in the classified service of the city and in such a manner as the Commission in its sound discretion may deem advisable. While in the instant case the Commission did not formally adopt such a rule it did, prior to the examinations conducted by it, call upon the Director of Public Service-Safety for and received from him records made by him of the efficiency and seniority of each employee in the classified service in the police and fire departments, which have been kept on file by it and which constitute efficiency records within the meaning of said sections and have been and are sufficient to serve all the purposes to be accomplished by the adoption of such a rule

**500**

and the keeping and maintaining of such record.

This action on the part of the Commission therefore constituted a substantial compliance with the provisions of said sections and the failure of the Commission to formally adopt such rule did not render the proceedings had by the Commission with reference to such examinations and such certifications invalid.

For the reasons mentioned the second ground of relief of the plaintiff is without merit.

3. Sec. 486-15 GC, in part provides that in promotional examinations efficiency and seniority in service shall form a part of the maximum mark ·attainable in such examinations. It does not prescribe the part of the maximum mark that either efficiency or seniority shall form and consequently the civil service commission under this section is vested with the power within its sound discretion to determine what part of the maximum mark either shall form.

In the instant case the Civil Service Commission determined by resolution that a maximum of five points for efficiency and a maximum of ten points for seniority should be added to the grade received by each applicant in the written examination forming a part of the maximum grade attainable, which was within the sound discretion of the Commission.

In grading the examinations each applicant was given the maximum mark of five points for efficiency. Plaintiff complains of this as constituting an abuse of discretion on the part of the Commission. The Commission was vested with the power, within its sound discretion, to determine the mark within the limits prescribed by its resolution to be given to each applicant. The evidence fails to show that there was any abuse of discretion on the part of the Commission in any respect in regard to this matter.

It is also contended by the plaintiff that while the Commission adopted ten points as the maximum mark for seniority in service and in grading the examinations gave this maximum mark to the applicants having the longest record of service, it gave other applicants a mark for seniority in excess of the percentage of said mark of ten points the period of service of the applicant bore to the period of service of the applicant having the longest service record. This occurred in the examination for Captain of Police where the applicant with the longest service, seventeen years, was given a mark of ten for seniority while the other applicant with a service of three years was given a mark of three points for seniority when on the percentage basis mentioned such applicant was entitled only to a mark of 1.76 point for seniority. However, it appears from the maximum mark received by the various applicants for examination that a correction of the credits given for seniority to conform to the percentage basis mentioned would not result in any change in the person receiving the highest grade at any of the examinations and the consequent certifications thereof. Although the method of grading for seniority within the ten points mentioned was erroneous it was not prejudicial to any one and did not render the examinations or certifications thereof or appointments made pursuant thereto invalid.

As for the reasons hereinbefore mentioned plaintiff is not entitled to relief on any of the grounds mentioned, judgment will be entered upon the issues joined under the pleadings, in favor of defendants and against plaintiff at plaintiff's costs and execution will be awarded against plaintiff therefor.

CROW, PJ. & KLINGER, J., concur.