In the Matter of GEORGE BLUMENTHAL et al., Respondents, against FERDINAND Q. MORTON et al., Constituting the Municipal Civil Service Commission of the City of New York, Appellants, and MIGUEL KOTY, on Behalf of Himself and Others Similarly Situated, Interveners, Appellants.

First Department, April 12, 1948.

*Seymour B. Quel* of counsel (*Angela R. Parisi* with him on the brief; *John P. McGrath,* attorney), for Municipal Civil Service Commission, appellant.

*Paul Windels* of counsel (*David B. Tolins* with him on the brief), for interveners, appellants.

*Samuel D. Smoleff* for respondents.

PECK, P. J. The Municipal Civil Service Commission conducted the written promotion examination in question for the position of sergeant of the New York City Police Department. About 7,000 candidates took the examination, including the 111 petitioners and the 117 intervening defendants. The examination consisted of ninety " multiple choice " questions. Four possible answers to each question were submitted for the candidates' consideration, with the instruction to select " the best one of the four choices." After the examination, the commission, in accordance with its usual practice, published tentative key answers in the *City Record* and announced that protests could be filed. The tentative key answers so published included two or more answers to four out of the ninety questions. About one thousand protests were filed including protests from several of petitioners. After considering the protests, the commission published final key answers accepting two or more answers to five additional questions, resulting in two or more answers being accepted as " best " to nine of the ninety questions on the examination. The examination papers were rated in accordance with the final key.

Petitioners moved at Special Term for an order canceling the examination or directing defendants to eliminate from the examination the nine questions or to revise and rerate the examination in accordance with the instructions. Petitioners' contention is that the examination was conducted on the premise that there was one " best " answer to each question and that only one answer should be accepted as " best " to any question. If a question does not lend itself to competitive rating on the basis of a " best " answer, petitioners contend that question should be eliminated from the examination. The commission contends that, as its good faith is not questioned, its exercise of discretion should not be disturbed.

The court at Special Term held that by accepting two, three or four answers to some questions, the commission departed from the standard it had set and the instruction it had given to the candidates taking the examination. The court directed the commission to conform to that standard and instruction by selecting one best answer to each question.

While the Civil Service Commission is vested with wide discretion in preparing and grading examinations for civil service positions (*Matter of Allen* v. *Finegan,* 254 App. Div. 858; *Matter of Immediato* v. *Kern,* 278 N. Y. 680; *Matter of Brady* v. *Finegan,* 269 N. Y. 571), the action of the commission must conform with legal standards which stem from the constitu-

tional provision that appointments and promotions in the civil service shall be made according to merit ascertained by examinations which shall be competitive. "A test or examination, to be competitive, must employ an objective standard or measure. Where the standard or measure is wholly subjective to the examiners it differs in effect in no respect from an uncontrolled opinion of the examiners and cannot be classed as competitive. * * * An examination cannot be classed as competitive unless it conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed, when necessary, by other examiners of equal ability and experience." (*Fink* v. *Finegan*, 270 N. Y. 356, 361-362.)

The examination and grading must be objectively fair and calculated by objective standards to test the relative merit of the examinees. The instructions are an integral part of the examination and constitute a predicate of both the candidates' and commission's action, and necessarily the questions must be capable of answers which may be objectively graded.

The instructions here assumed, or at least would be understood by those taking the examination to assume, that there was *one* best answer to each question. Although the commission defends, on entirely sound grounds, this type of examination, which is calculated to test judgment rather than mere knowledge, it does not suggest that there was any artifice in the instructions or the examination, or that the questions were prepared with the thought or intention of allowing more than one *best* answer to any question. We need not consider, therefore, but might even assume, the propriety of an examination, under fair instructions, which allowed more than one acceptable answer to a question. It is altogether clear here that this examination was set up and conducted on the basis of there being one best answer to each question, and the subsequent departure of the commission from that base standard, first by accepting multiple answers as best for four questions and then adding five more questions to the list in which multiple answers would be accepted as best, including the acceptance of diametrically opposite answers to one question and all four answers to another question, was the result of mistakes in preparing the examination questions.

A "best" answer is something different from an acceptable answer. It is a relative matter and assumes, by the very employment of the word "best", that there are alternatives of relative merit, of which one is the best. As a civil service examination is intended to test relative merit, the kind of examination

nation employed here, calculated to determine and test the discernment and judgment of the candidates in making a selection of the best of several alternatives, is peculiarly appropriate. The entire virtue of such an examination, however, lies in the existence of an objectively best answer. It is obvious that if more than one answer to a question is accepted as best, an action which is antithetical, there is a denial of a rating based on relative merit.

It can hardly be argued, therefore, that if a question is susceptible of a single best answer it is permissible to accept as best other answers which are not relatively as good. To give the commission discretion to do so would be to tolerate a subjective standard or measure which is not permitted. The commission should certainly be expected and required, therefore, to select the single best answer wherever it is objectively possible to do so. It is quite clear that in the case of most of the nine questions in dispute on this examination it can do so.

The trouble is that some of the questions are so inadequately or indefinitely framed that it is difficult to determine the best answer, and in some cases it is impossible to give any answer. While one or two questions might legitimately be regarded as permitting of more than one equally good answer, any difficulty in settling upon a " best " answer to the questions involved is not due to problems or differences of judgment but due to inadequacies or deficiencies in the questions. The adjustments the commission felt necessary to make in the key and the multiplication of answers it decided to accept were not so much an allowance for differences in judgment as an attempt to compensate for deficiencies in the questions. Assuming that something of the kind might be done within limits, and that an error, oversight or miscalculation in preparing an examination is not fatal or beyond repair, we are of the opinion that the miscarriages here, involving 10% of the questions, as dealt with by the commission, would render the examination substantially noncompetitive and defeat the purpose for which examinations are held.

The decision of the learned justice at Special Term is more in accord with the requirements of the occasion than the action of the commission. In principle, at least, it is sound in requiring the commission to determine the " best " answer to each question. We may readily observe that despite the difficulties all but two or three of the questions lend themselves to a single best answer. Only by insisting that the commission act accordingly will the spirit of the examination be kept and its purpose fulfilled.

The objection to Special Term's direction is that a few questions, because of their deficiencies, are not capable of a best answer or any satisfactory answer. The commission should not be required in those instances to make what would be an arbitrary selection of an answer. That would be quite as unfair as the commission's compromise of approving multiple answers. It would seem that such questions should be eliminated from the examination altogether. That can be done with no prejudice to the examination or harm to anyone. The only consequence would be to require a slight credit adjustment for the remaining questions. It is fairer and better that such questions be so eliminated than that they be counted on some arbitrary or compromised basis. To require the commission to select a single best answer in the case of every question in which that may be done, and to eliminate the question where that cannot be done, is not to interfere with any legitimate discretion of the commission or to substitute the court's judgment for the commission's judgment, but merely to require the commission to proceed in accordance with its own examination and the law.

The order appealed from should be modified to permit the commission to eliminate from the examination such questions as it deems incapable of a best answer, making the necessary readjustment in the credit to be given on each of the remaining questions, and otherwise affirmed.

DORE, J. (dissenting). The questions are not attacked as being irrelevant to the duties of a sergeant in the police department.

The issue is not as to questions calling for answers that are either absolutely right or absolutely wrong as in the case of mathematical or grammatical tests. The connotations of the word " best " demonstrate that the questions were in a realm which necessarily allows considerable scope for judgment in determining what is relatively best out of four possible answers. The questions tested judgment, not memory or grammatical or mathematical accuracy. One question that called for a statistical answer was capable of two reasonable interpretations.

In the opinion of the majority, only " a few " of the nine (out of ninety) questions in issue were not capable of one best answer.

An examination of the nine questions in issue and of the final key answers, indicates that different persons may reasonably differ in their judgment as to which of certain of the answers were best. The commission considered protests (which

it invited), consulted authorities and published the final key answers providing two or more correct answers to nine of the questions and then rated all papers equally in accordance with such objective final key. If errors were made either in the framing of the nine questions or selecting the best or correct answers, they were errors of judgment. Though the court or a majority thereof may differ with the commission in its judgment as to some of the questions or answers, that alone is not a proper basis for holding that the commission acted illegally, arbitrarily or capriciously.

In the exercise of its best judgment and discretion, concededly in good faith and without fraud, and with regard to matters involving judgment and discretion, the commission has selected an objective standard of answers to the nine questions at issue and has applied it equally to all candidates when rating the papers before promulgating the list. No one received an illegal bonus, or a credit in excess of what was equally and legally allowed to all others. All were judged by the same standard.

In our system of government, functions are apportioned: to the legislative department, the duty of making laws; to the executive, of executing them, and to the judiciary, of interpreting and applying them in cases properly brought before the courts (*Massachusetts* v. *Mellon,* 262 U. S. 447, 488). The judgment of the court is not to be substituted for the judgment of the commission. If it were, as the facts in this case persuasively indicate, the court in the final analysis would be drawn into preparing, revising and correcting questions in civil service examinations, supervising the examinations, and finally rating the papers. Such duties are not the court's function. As this court said in *People ex rel. Caridi* v. *Creelman* (150 App. Div. 746, 749): " The court can neither conduct nor supervise civil service examinations."

Only with regard to question 82, where the final key states that all four possible alternative answers were deemed proper can it be said that the answer would not indicate comparative merit. But here also every candidate was treated equally. Before rating the papers and publishing the list, the commission in its discretion could have lowered the passing grade by one point and a fraction, and the result would be the same. That the commission has such power when exercised in good faith and before promulgating the list has been repeatedly held.

In *Matter of Brady* v. *Finegan* (269 N. Y. 571, affg. 246 App. Div. 526) the Municipal Civil Service Commission rules provided that a candidate must not receive less than 20%

in any required subject. After an examination for patrolman but before rating the papers and publishing an eligible list, the commission amended the rule by substituting a minimum of 50% on any required subject in place of the 20% theretofore existing and applied it in its amended form to all candidates who took the examination. This court reversed an order of Special Term in favor of the petitioner against the Municipal Civil Service Commission and the Court of Appeals unanimously affirmed.

In *Matter of Immediato* v. *Kern* (278 N. Y. 680, affg. 254 App. Div. 672) the instructions to candidates provided that the examination was planned to test their ability to read and follow instructions, one of which directed them to write on only one of three subjects. A large number failed to follow the instructions and wrote on all three subjects. They were, nevertheless, given a passing mark and placed on the eligible list being marked on the basis of 33⅓% for each subject with a deduction of 10% for failure to follow the instruction. This court unanimously reversed an order of Special Term in favor of a petitioner '' on the ground that the civil service commission acted within its discretion in grading the examination papers in the manner disclosed herein.''

In *Wittenkind* v. *Kern* (281 N. Y. 701) relied on by respondents, the commission lowered the passing mark *after* the ratings were completed and after the list had been published and exhausted. The court held the commission had no power *then* to lower the passing mark in the examination and thus add retroactively additional names to a published competitive list on a basis substantially different from the basis on which the original names had been added. But that state of facts is not here presented. Concededly, in this case the final key answers determined by the commission are being applied to all papers equally before publication of the list.

In the final analysis the issue amounts to nothing more than a difference of opinion between the commission and the petitioners or the commission and the majority of this court as to which were relatively the best or correct answers. By accepting more than one answer in nine out of ninety questions the commission did not deny a rating based on relative merits; the key answers published were obviously not subjective but objective tests.

The commission has already exercised its best judgment and discretion. The majority opinion insists that the commission re-exercise it in accordance with the judgment of the majority

of the court as to all but " a few " undesignated questions. It cannot be emphasized too strongly that there is no claim here made of bad faith or fraud. The commission has acted with fairness and there is no warrant for substituting the judgment of the court for its honest judgment arrived at with painstaking care, establishing an objective standard equally applicable to all candidates.

If after already exercising its best judgment and discretion, the commission, on the coercive mandate of the court, were to revise its judgment and determine the " one best " answer to questions in dispute or to all but " a few " thereof — these or other candidates who took the examination may again contend that the *revised* answers are not the " best " and again ask the court to substitute its judgment for that of the commission.

In the conduct of civil service examinations the actions of the commission control unless they are illegal, arbitrary or capricious or done in fraud or bad faith. We may not say that some reasonable basis did not exist in each instance for the action taken by the members of the commission and in any event we may not substitute our judgment for theirs.

Accordingly, we dissent and vote to reverse the order appealed from and dismiss the petition.

VAN VOORHIS and SHIENTAG, JJ., concur with PECK, P. J.; DORE, J., dissents in opinion in which CALLAHAN, J., concurs.

Order modified to permit the commission to eliminate from the examination such questions as it deems incapable of a best answer, making the necessary readjustment in the credit to be given on each of the remaining questions, and otherwise affirmed. Settle order on notice.