THE STATE, EX REL. HANLEY, APPELLANT, *v.* ROBERTS,
CITY MANAGER, ET AL., APPELLEES.

[Cite as State, ex rel. Hanley, *v.* Roberts (1985), 17 Ohio St. 3d 1.]

(No. 84-508—Decided April 24, 1985.)

1

*Faulkner, Mowery & Brown, J. Rick Brown* and *Thurl K. Blume,* for appellant.

*Richard T. Schisler,* city solicitor, for appellees city manager and members of the Portsmouth Municipal Civil Service Commission.

*Richard L. Eisnaugle,* for appellee Workman.

*Per Curiam.* The Charter of the city of Portsmouth includes no special terms relative to civil service, but instead prescribes that "* * * all provisions of general law with reference to civil service shall govern the operation of the civil service of the City * * *."[4] We therefore analyze the

[4] Section 63 of the Portsmouth Charter reads:

"There shall be a Municipal Civil Service Commission consisting of the number of members and who shall be appointed by the Council in the manner prescribed and for the term or terms provided, or which may be hereinafter provided by general law.

"Said Municipal Service Commission shall have all the powers and duties prescribed by general law for Municipal Civil Service Commissions and all provisions of general law with reference to civil service shall govern the operation of the civil service of the City, unless otherwise provided in this Charter, provided however that nothing herein shall be construed to abridge any rights of any kind and nature of any employee of the City which became fixed by this Charter prior to the adoption of this section as amended."

Additionally, Section 165 of the Portsmouth Charter states in part:

"All general laws of the State applicable to municipal corporations, now or hereafter enacted, and which are not in conflict with the provisions of this Charter, or with ordinances or resolutions hereafter enacted by the Council, shall be applicable to this City * * *."

issues presented in light of the appropriate sections of the Revised Code and the attendant case law.[5]

The court of appeals, in its disposition of this action, found that appellant had an adequate remedy via appeal, and consequently, quo warranto would not lie. The court based its decision on *State, ex rel. Steyer,* v. *Szabo* (1962), 174 Ohio St. 109 [21 O.O.2d 366], where we held that quo warranto relief was not available because of the existence of the statutory appeal procedure in R.C. 2506.01 *et seq.* The threshold question, then, is whether appellant could have obtained any relief by way of appeal.

R.C. 2506.01 provides that "[e]very final order, adjudication, or decision of any * * * commission * * * of any political subdivision of the state may be reviewed by the common pleas court of the county in which the principal office of the political subdivision is located, as provided in sections 2505.01 to 2505.45, inclusive, of the Revised Code, and as such procedure is modified by sections 2506.01 to 2506.04, inclusive, of the Revised Code."

As a prerequisite for appeal, and for the time for perfecting an appeal to begin to run, R.C. 2505.07 provides:

"*After the journal entry* of a final order, judgment, or decree has been approved * * * in writing and filed * * * for journalization, or after the entry of other matter for review, the period of time within which the appeal shall be perfected unless otherwise provided by law is, * * * (B) * * * within ten days." (Emphasis added.)

In *Schenley* v. *Kauth* (1953), 160 Ohio St. 109 [51 O.O. 30], this court considered G.C. 12223-7, the predecessor to R.C. 2505.07. At paragraph one of the syllabus, we held:

"A court of record speaks only through its journal and not by oral pronouncement or mere written minute or memorandum."

In paragraph two of the syllabus, we declared that pursuant to statute, "the filing of a journal entry * * * is essential to start the running of the period of time, therein prescribed, within which an appeal may be perfected."

In *Grimes* v. *Cleveland* (C.P. 1969), 17 Ohio Misc. 193 [46 O.O.2d 279], at 195-196, a Cuyahoga County trial court applied the principles of *Schenley* in terms with which we agree:

"It is clear that since the statute definitely applies to an administrative agency as well as to a court of record, such agency has the duty of reducing its rulings to writing before they may become effective and before the ten-day period for an appeal can start running. * * *

"The form of written entry of a decision of an administrative board

---

[5] While neither party raises the issue, we note that a chief of police occupies a "public office" within the meaning of R.C. Chapter 2733 relative to quo warranto actions. *State, ex rel. Mikus,* v. *Hirbe* (1965), 5 Ohio App. 2d 307 [34 O.O.2d 490], affirmed (1966), 7 Ohio St. 2d 104. See, also, *State, ex rel. Steyer,* v. *Szabo* (1962), 174 Ohio St. 109 [21 O.O.2d 366]; *State, ex rel. Ethell,* v. *Hendricks* (1956), 165 Ohio St. 217 [59 O.O. 298].

should be the written minutes of its meeting at which the decision was rendered. * * * The ten-day period for appeal starts to run at the time when the board's decision has been set forth in writing in its minutes."

Accord *Sun Oil Co.* v. *Board of Zoning Appeals* (C.P. 1966), 9 Ohio Misc. 101 [38 O.O.2d 152], at 102, where another trial court explained that the time for appeal "does not commence upon a mere verbal announcement of the decision."

In the same connection, the court of appeals in *Lakewood Homes* v. *Bd. of Adjustment* (1971), 25 Ohio App. 2d 125 [54 O.O.2d 306], discussed the administrative procedure statutes and at 131 commented:

"The statute [R.C. 2505.07] is explicit in its reference to 'entry of other matter' for review. That there be a permanent, written record of some nature is implicit and inherent in the use of the word 'entry.' "

In this case, the record is devoid of the actual minutes of the commission's rejection of appellant's complaint. Because of the commission's failure to journalize its decision appellant asserts that "the remedy by way of appeal was not available." We agree. The court of appeals failed to take into account the requirement that the commission's decision be journalized before it could become a final appealable order. In that failure lies the error in the judgment below. We consequently hold that pursuant to R.C. 2505.07, the decision of an administrative agency must be journalized before an appeal from such decision may be taken under R.C. 2506.01. Since this was not done here, appellant has no means available by which he may seek redress of his grievances; he therefore can resort to the extraordinary remedy of quo warranto.

We now proceed to issues not addressed by the court of appeals.

Appellees concede that contrary to law and the commission's own rules,[6] efficiency points were not counted in computing the examination scores. They argue, however, that "once a public official has successfully completed his probationary period, * * * he cannot be removed by quo warranto, but rather can only be removed for cause." As support, they rely on *State, ex rel. Polen,* v. *Wymer* (1973), 36 Ohio St. 2d 24 [65 O.O.2d 96], the syllabus of which reads:

"Where a candidate is certified as having scored the highest grade in a promotional civil service examination that was not graded in full conformity with civil service law, and where it does not appear that the candidate

---

[6] The pertinent part of R.C. 124.31(B) reads:

"All examinations for promotions shall be competitive and in writing. *In promotional examinations, efficiency and seniority in service shall be added to the examination grade,* but no credit for seniority, efficiency, or any other reason shall be added to an examination grade unless the applicant achieves at least the minimum passing score on the examination without counting such extra credit." (Emphasis added.)

Similarly, Section 5, Rule XIII of the Rules and Regulations of the Portsmouth Municipal Civil Service Commission provides, in part: "* * * Each promotional examination shall consist of the following parts: a. Performance Ratings * * *."

so certified knew of or participated in the irregular grading, he will not be replaced by one bringing an action in quo warranto who failed to take affirmative action to prevent the certification and permanent appointment."

*Wymer* and its related decisions are inapposite.[7] Workman has not attained the permanent tenure that would insulate him from quo warranto.

The city manager's pretended permanent appointment, made three days before the expiration of Workman's probationary period, was ineffective and void *ab initio*. R.C. 1.45 provides: "If a number of months is to be computed by counting the months from a particular day, the period ends on the same numerical day in the concluding month as the day of the month from which the computation is begun * * *." Moreover, the course of events in the courts below, culminating in an injunction preventing Workman's permanent installation until the dispute is decided by this court, precludes application of the *Wymer* rule.

In *State, ex rel. Heer,* v. *Butterfield* (1915), 92 Ohio St. 428, at paragraph one of the syllabus, this court held:

"In order that a private relator may be entitled to maintain an action in quo warranto under Section 12307, General Code [now R.C. 2733.06], to recover a public office, he must show not only that he is entitled to the office, but also that it is unlawfully held and exercised by the defendant in the action."

With respect to showing in a quo warranto action that he is entitled to recover a public office, a relator need not prove his own title beyond all doubt. He need only establish his claim "in good faith and upon reasonable grounds." *State, ex rel. Ethell,* v. *Hendricks* (1956), 165 Ohio St. 217 [59 O.O. 298], paragraph three of the syllabus; *State, ex rel. Halak,* v. *Cebula* (1977), 49 Ohio St. 2d 291, 293 [3 O.O.3d 439].

Appellant argues that Workman's earlier participation in an identical examination disqualifies his certification and appointment. From this, appellant reasons that he should be designated chief of police since he ranked second on the eligibility roster. Appellees answer that " '[a] mere possibility of appointment does not constitute entitlement in any way.' " *State, ex rel. Halak, supra,* at 293.[8] We find the latter's argument unpersuasive.

---

[7] Previously, this court decided *State, ex rel. Byrd,* v. *Sherwood* (1942), 140 Ohio St. 173 [23 O.O. 403], *Kluth* v. *Andrus* (1952), 157 Ohio St. 279 [47 O.O. 171], and *State, ex rel. Mikus,* v. *Hirbe, supra,* all of which stand for the general proposition that where an appointee in the classified service has completed his probationary period, he cannot be ousted by quo warranto even though testing or grading procedures were fraudulent and efficiency credits were not counted.

[8] Appellees also argue that the civil service statutes do not preclude taking an identical examination twice after a six-month period has expired. This argument flies in the face of the policy underlying the merit system. Section 10, Article XV, of the Ohio Constitution provides, in pertinent part, that "[a]ppointments and promotions in the civil service of * * * cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by *competitive* examinations." (Emphasis added.) R.C. 124.31(B), pertaining to promotions,

R.C. 124.44 requires the civil service commission to "certify to the appointing officer the name of the person receiving the highest rating. Upon such certification, the appointing officer shall appoint the person so certified within thirty days from the date of such certification." Accordingly, if Workman's score is invalid because he had an unfair advantage, appellant's appointment would be more than a mere possibility. Under the statute, appellant's appointment would be a certainty, because he is second on the list of eligibles.

Appellant has, therefore, alleged a claim to the office of chief of police based upon "good faith and upon reasonable grounds."

In addition, appellant attacks Workman's certification on another ground. He contends the results of the 1983 promotional examination are void for the reason that efficiency points were not included as part of the final scores.

R.C. 124.31(B) provides that efficiency credit "shall be added to the examination grade * * *." This requirement is stated in terms[9] we hold to be mandatory.[10] Equally mandatory is the specification in the commission's own rules that "[e]ach promotional examination shall consist [in part] of * * * [p]erformance ratings."

In *State, ex rel. Ethell,* v. *Hendricks, supra,* at 223, we declared that where a civil service promotional examination is conducted contrary to law, "it is not possible to consider merely the written portion thereof and decide from that who is entitled to the promotion for which the examination was given," and "it follows necessarily that if one part of such an examination is unlawful then the whole examination must fail."[11]

---

states that "[a]ll examinations for promotions shall be *competitive* and in writing * * *" (Emphasis added.) Similarly, R.C. 124.44 requires that "* * * [n]o position above the rank of patrolman in a police department shall be filled by any person unless he has first passed a *competitive promotional examination.* * * *" (Emphasis added.) Where any applicant has taken an examination "substantially the same" as one taken previously, and his competitors have not taken the previous examination, such applicant certainly would enjoy an unfair advantage and the second examination becomes less than "competitive."

[9] "In statutory construction, -* * * the word 'shall' shall be construed as mandatory * * *." *Dorrian* v. *Scioto Conserv. Dist.* (1971), 27 Ohio St. 2d 102 [56 O.O.2d 58], paragraph one of the syllabus.

[10] Other Ohio decisions have likewise so held. See *State, ex rel. Herder,* v. *Schock* (1977), 55 Ohio App. 2d 116 [9 O.O.3d 268]; *State, ex rel. Linder,* v. *Troy Civil Service Comm.* (1963), 118 Ohio App. 345 [25 O.O.2d 221]; *Underwood* v. *Bellefontaine* (1939), 64 Ohio App. 205 [18 O.O. 70]; *State, ex rel. Owens,* v. *Brewer* (C.P. 1979), 62 Ohio Misc. 20 [13 O.O.3d 91]. See, also, *State, ex rel. Campbell,* v. *Municipal Civil Service Comm.* (1978), 53 Ohio St. 2d 114, at 116 [7 O.O.3d 190], where this court recognized that the counting of efficiency credits is compulsory, and observed, in light of R.C. 124.44, 124.23, and 124.31, that: "It is clear that before the results of a promotional examination can be certified to the appointing officer under R.C. 124.44, the examination itself must have been properly administered."

[11] Although *Hendricks* was decided upon statutes which have since been extensively revised, we find its rationale to be a valuable aid in the resolution of the issues presented here.

Ironically, because the entire 1983 promotional examination for chief of police is void, appellant can no more claim a valid title to that office than can Workman. Accordingly, although we allow the writ of quo warranto, we are constrained to confine its effect to the ouster of Workman only.[12]

Finally, appellant requests the court to issue a writ of mandamus to compel the commission to conduct another examination according to law. " 'In order to grant a writ of mandamus, the court must find that the relator has a clear legal right to the relief prayed for, that the respondent is under a clear legal duty to perform the requested act, and that relator has no plain and adequate remedy at law.' " *State, ex rel. Halloran,* v. *Zapatony* (1984), 15 Ohio St. 3d 73, 74. In the case at bar, appellant has a "clear legal right" to a new examination. By this decision, the office of chief of police is vacant, and appellant is eligible to take the promotional examination necessary to fill such vacancy. He possesses an interest in seeing that the examination is fair, competitive, and held in full compliance with the law. Second, the commission is under a "clear legal duty" to conduct another test. It has a statutory obligation under R.C. Chapter 124 to see that all promotions in the classified service are made pursuant to a competitive examination. Third, appellant has no "adequate remedy at law," because, as we have discussed, he has been foreclosed from pursuing an appeal under R.C. 2506.01 *et seq.*

In view of the foregoing, the certification of Workman as chief of police was unlawful and he is not entitled to that position. Since the facts which cause us to order the ouster of Workman preclude us from ordering appellant certified and appointed, we limit our judgment in quo warranto to the ouster of Workman. We further allow a writ of mandamus to compel the Portsmouth Municipal Civil Service Commission and the Portsmouth City Manager to proceed to administer a new competitive promotional examination for the office of Chief of Police of Portsmouth, to certify the highest score, and to make appointment of the applicant receiving such score, all according to law as hereinbefore determined. The judgment of the court of appeals is reversed.

*Judgment reversed and
writs allowed accordingly.*

CELEBREZZE, C.J., SWEENEY, HOLMES and C. BROWN, JJ., concur.

WRIGHT, J., concurs in judgment only.

LOCHER and DOUGLAS, JJ., dissent.

---

[12] R.C. 2733.08 provides that in quo warranto actions, "[j]udgment may be rendered upon the right of the defendant, and also on the right of the person averred to be so entitled, or only upon the right of the defendant, as justice requires." See, also, paragraph three of the syllabus in *State, ex rel. Ethell,* v. *Hendricks, supra.*

DOUGLAS, J., dissenting. The place one comes out, when faced with the issues raised in a case, depends largely on where one starts. The majority starts by summarily concluding: "The essential facts of this case are undisputed." I start by noting that this case is before us on a very sparse record, consisting mostly of motions and briefs, items of correspondence, a transcript of proceedings from an entirely separate (albeit factually related) case and a limited stipulation of facts.

The transcript of proceedings is from the Scioto County Common Pleas Court case, *Hanley* v. *Roberts,* which was apparently pending when appellant initiated this case as an original action in the Court of Appeals for Scioto County. During arguments in the common pleas court, Workman's attorney stated:

"If nothing else we have accomplished one fact, and that is that the facts are sure as the dickens in dispute."

Hanley's attorney agreed:

"The facts are always in dispute. Of course, that's why we're here."

The facts are (almost) always in dispute, and that is why they must be developed in an evidentiary hearing conducted pursuant to the Rules of Evidence. Nothing of the sort has been done in this case. Consequently, we really do not know whether the 1980 and 1983 promotional exams were the same, or similar. We do not know whether the alleged similarities rendered the 1983 test uncompetive. I reject the majority's conclusion that the alleged similarities between the two tests made the 1983 test *per se* uncompetitive. I think a determination of the competitiveness of the 1983 test depends on an analysis of its nature and content.

Furthermore, I note the relevance of Ohio Adm. Code 123:1-9-12 which reads:

"An applicant who has competed in a civil service examination *may not repeat that examination* or take an examination for the same classification *within six months* from the date of original examination, unless an alternative form of examination is given, or unless other standards are specified in the examination announcement, provided that the Director may waive in writing this rule upon written request from an applicant stating substantial reasons for granting such waiver." (Emphasis added.)

This provision makes it clear that an applicant may retake the identical exam after waiting six months. In the case before us, there is no evidence that the 1980 and 1983 exams were identical. To the contrary, the record contains a November 1, 1983 letter from IPMA to the Executive Secretary of the Portsmouth Civil Service Commission, which states, in relevant part:

"* * * It cannot be stated for certain whether or not the 1980 and 1983 IPMA 558 examinations are identical. * * *"

The majority is disturbed because efficiency points were not added to the examination grades as required by R.C. 124.31(B). Again, there is nothing in the record to support appellant's contention that the addition of

efficiency points would have caused the civil service commission to rank him ahead of Workman. For all we know, Workman might have had as many, or more, efficiency points than the appellant. My point is that the record in this case is, at best, incomplete, and the extraordinary relief of quo warranto should not be granted unless the record positively indicates that such relief is appropriate.

I also believe that appellant had an adequate remedy at law to protect his interests, and is, therefore, not entitled to the quo warranto or mandamus relief he now seeks. Appellant could have formally petitioned the civil service commission for relief, and appealed the denial of that relief pursuant to R.C. Chapter 2506. For instance, appellant could have formally requested the commission to utilize efficiency points in determining the overall rankings for police chief and appealed the commission's denial of his request. If the commission would have then refused to journalize its denial of appellant's request, a point of concern to the majority, he could have quickly obtained a writ of mandamus to compel the commission to conform to its clear legal duty and to journalize its decision. Then he could have appealed. See *State, ex rel. Steyer,* v. *Szabo* (1962), 174 Ohio St. 109 [21 O.O.2d 366].

Finally, I am concerned about this court extending the scope of quo warranto beyond that which was originally intended. R.C. 2733.08, dealing with petitions against a person for usurpation of office, states in relevant part:

"When an action in quo warranto is brought against a person for usurping an office, the petition shall set forth the name of the person claiming to be entitled to the office, with an averment of his right thereto. * * *"

In *State, ex rel. Heer,* v. *Butterfield* (1915), 92 Ohio St. 428, this court held a private relator could not obtain quo warranto relief unless he could prove he was entitled to the office he claimed was unlawfully held. In this case, the appellant has failed to prove he is entitled to the office he claims is unlawfully held. Therefore, he is not entitled to quo warranto relief.

Finally, the majority decision undermines the independence of an equal branch of government, and thrusts itself into the role of the Portsmouth Civil Service Commission. In light of the sparse record in this case, it would be appropriate to defer the administration of the civil service system to the proper city officials.

For the foregoing reasons, I would affirm the court of appeals decision, which stated that "* * * relator is not entitled either to quo warranto or mandamus relief for the reason relator had an adequate remedy at law by raising his objections before the Civil Service Commission and appealing adverse rulings pursuant to R.C. Chapter 2506."

LOCHER, J., concurs in the foregoing dissenting opinion.