[This opinion has been published in *Ohio Official Reports* at 71 Ohio St.3d 632.]

THE STATE EX REL. BRENDERS *v*. HALL ET AL.

[Cite as *State ex rel. Brenders v. Hall*, 1995-Ohio-106.]

*Civil service—Promotional examination for police lieutenant—Action in quo warranto seeking appointment to position—Claim that examination was not "competitve" because one out of one hundred forty-five questions was improper—Court will not substitute its opinion for that of the municipal civil service commission, when.*

(No. 94-275—Submitted January 24, 1995—Decided March 29, 1995.)

IN QUO WARRANTO.

————————————

{¶ 1} Relator, James T. Brenders, and respondent, Timothy J. Hall, are police officers of the Police Department of Brook Park, Ohio. On August 23, 1993, Brenders and Hall took the police lieutenant promotional examination given by respondent, Brook Park Civil Service Commission ("commission").

{¶ 2} Hall received the highest grade of the candidates for the police lieutenant position, and Brenders received the second highest grade. Hall's higher grade was the result of having one more correct answer than Brenders. On August 27, 1993, Brenders challenged, *inter alia*, question 11 of the promotional examination. The question provided:

"During a police search of an area, suspects will most frequently hide

"(a) under houses, bushes, etc.

"(b) behind large objects

"(c) inside small recessed areas

"(d) on the roofs of houses, sheds, etc."

{¶ 3} Brenders answered "a" to question 11, and Hall answered "d," the latter being the correct response according to the answer key. In his challenge,

Brenders claimed that the best answer was actually "a." If question 11 were voided, Brenders and Hall would receive the same score, and Brenders would be entitled to the police lieutenant position because he has more seniority than Hall. Rule VI(3) of the Rules and Regulations of the Brook Park Civil Service Commission.

{¶ 4} The commission referred Brenders's challenges to International Personnel Management Association ("IPMA"), the company that prepared the examination, for its review. IPMA reviewed Brenders's challenges and noted that answer "d" to question 11 of the promotional examination was supported by an excerpt from Principles of Police Patrol by N.F. Iannone. On September 20, 1993, the commission rejected Brenders's challenges "based upon the documentation received from IPMA supporting their answers to the questions challenged." Brenders attempted to "appeal" the commission's denial of his challenge with the commission, but the commission informed him that it was not a proper appeal. On October 6, 1993, the commission certified the names of Hall, Brenders, and two other candidates on the eligible list for police lieutenant, with Hall ranked first and Brenders second. Hall was appointed police lieutenant based upon his score on the promotional examination.

{¶ 5} Brenders instituted this action in quo warranto against Hall, the city of Brook Park, its civil service commission and its police department, seeking Hall's ouster from, and Brenders's appointment to, the position of Brook Park Police Lieutenant.

————————————

*Randall M. Perla* and *Scott D. White*, for relator.
*Duvin, Cahn, Barnard & Messerman* and *Kenneth B. Stark*, for respondents.

————————————

*Per Curiam.*

**{¶ 6}** Brenders asserts in his sole proposition of law that the office of lieutenant in the Brook Park Police Department is being unlawfully held by Hall, and should be rightfully held by him, because the promotional examination was not competitive.

**{¶ 7}** "A person claiming to be entitled to a public office unlawfully held and exercised by another may bring an action therefor by himself or an attorney at law, upon giving security for costs." R.C. 2733.06. A police officer of a municipal corporation is a public officer and occupies a public office. *State ex rel. Mikus v. Hirbe* (1965), 5 Ohio App.2d 307, 34 O.O.2d 490, 215 N.E.2d 430, affirmed (1966), 7 Ohio St.2d 104, 36 O.O.2d 85, 218 N.E.2d 438. In order for a writ of quo warranto to issue, a relator must establish (1) that the office is being unlawfully held and exercised by respondent, and (2) that relator is entitled to the office. *State ex rel. Paluf v. Feneli* (1994), 69 Ohio St.3d 138, 141, 630 N.E.2d 708, 710; *State ex rel. Delph v. Barr* (1989), 44 Ohio St.3d 77, 541 N.E.2d 59, syllabus. Where proceedings before a municipal civil service commission are not quasi-judicial, a relator in a quo warranto action has no adequate remedy by appeal, and a consideration of the merits is required. *State ex rel. McArthur v. DeSouza* (1992), 65 Ohio St.3d 25, 599 N.E.2d 268.

**{¶ 8}** Section 10, Article XV of the Ohio Constitution provides that "[a]ppointments and promotions in the civil service of *** cities, shall be made according to merit and fitness, to be ascertained, as far as practicable, by competitive examinations." R.C. 124.31(B) provides that "[a]ll examinations for promotions shall be competitive and in writing." R.C. 124.44 provides that "[n]o position above the rank of patrolman in a police department shall be filled by any person unless he has first passed a competitive promotional examination" and "[a]fter such examination has been held and an eligible list established, the commission shall forthwith certify to the appointing officer the name of the person

receiving the highest rating." Under Section 10.02 of the Brook Park City Charter (1986 replacement), the commission "shall provide by rule for ascertainment of merit and fitness as the basis for appointment and promotion \*\*\*."

{¶ 9} Relator claims that the police lieutenant promotional examination was not "competitive," where one of the questions lacked objective support and was inconsistent with the assigned study materials. The word "competitive" is not defined in the Ohio Constitution or the Revised Code. In the absence of a specific statutory definition, words used in a statute must be interpreted in their usual, normal, or customary meaning. R.C. 1.42; *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 220, 631 N.E.2d 150, 153. A "competitive civil service examination" has been defined as an "[e]xamination which conforms to measures or standards which are sufficiently objective to be capable of being challenged and reviewed by other examiners of equal ability and experience." Black's Law Dictionary (6 Ed.1990) 284; *State ex rel. Delph v. Greenfield* (1991), 71 Ohio App.3d 251, 262, 593 N.E.2d 369, 376.

{¶ 10} In determining the breadth of the term "competitive," it should be emphasized that the "fundamental purpose of civil service laws and rules is to establish a merit system, whereby selections for appointments in certain branches of the public service may be made upon the basis of demonstrated relative fitness, without regard to political considerations, and to safeguard appointees against unjust charges of misconduct and inefficiency, and from being unjustly discriminated against for religious or political reasons or affiliations. \*\*\*" *Curtis v. State ex rel. Morgan* (1923), 108 Ohio St. 292, 140 N.E. 522, paragraph four of the syllabus; *State ex rel. Zone v. Cleveland* (1986), 23 Ohio St.3d 1, 6, 23 OBR 1, 5, 490 N.E.2d 600, 604-605. The civil service laws may not be invoked where no discrimination is claimed and no charges have been made involving misconduct, inefficiency, or other delinquency. *Curtis, supra.*

**{¶ 11}** In *State ex rel. King v. Emmons* (1934), 128 Ohio St. 216, 221, 190 N.E. 468, 471, this court stated:

"What, then, is meant by 'competitive examination?' In a competitive examination, the candidates match their qualifications, each against the others, and the final determination is made by rating and comparison. It is open to all who are eligible. In contrast, a non-competitive examination is one in which the examining authority selects at pleasure such candidates as he may choose and subjects them to examination as he deems necessary." See, also, *Almassy v. Los Angeles Cty. Civ. Serv. Comm.* (1949), 34 Cal.2d 387, 398, 210 P.2d 503, 510.

**{¶ 12}** In the case at bar, Brenders claims that the examination was not competitive because one out of the one hundred forty-five questions was improper. However, the fact that one question may have been improper does not in and of itself compromise the fundamental purpose of the civil service laws. There is no evidence that the commission or Hall engaged in misconduct that gave Hall an unfair advantage over Brenders. Cf. *State ex rel. Hanley v. Roberts* (1985), 17 Ohio St.3d 1, 7, 17 OBR 1, 6, 476 N.E.2d 1019, 1024, at fn. 8, where the court opined that "[w]here any applicant has taken an examination 'substantially the same' as one taken previously, and his competitors have not taken the previous examination, such applicant certainly would enjoy an unfair advantage and the second examination becomes less 'competitive.'" Additionally, there is no evidence that the commission closed the examination to eligible applicants or selected Hall over Brenders based on anything other than the examination. Courts should not be "drawn into preparing, revising and correcting questions in Civil Service examinations, supervising the examinations, and finally rating the papers." *Blumenthal v. Morton* (1948), 273 A.D. 497, 503, 78 N.Y.S.2d 302, 307 (Dore, J., dissenting).

**{¶ 13}** New York was the first state to make the civil service merit and fitness requirement part of its Constitution, in an effort to ensure that "competence,

rather than cronyism, \*\*\* determine civil service appointments." *McGowan v. Burstein* (1988), 71 N.Y.2d 729, 733, 530 N.Y.S.2d 64, 65, 525 N.E.2d 710, 711. New York courts have noted that while municipal civil service commissions are vested with wide discretion in preparing and grading examinations for civil service positions, they must comport with the constitutional provision that promotions in the civil service shall be made according to merit ascertained by competitive examinations. See, *e.g., Blumenthal, supra*. As to multiple-choice promotional examinations, the court in *Blumenthal* held, 273 A.D. at 500-501, 78 N.Y.2d at 305:

"A 'best' answer is something different from an acceptable answer. It is a relative matter and assumes, by the very employment of the word 'best,' that there are alternatives of relative merit of which one is the best. As a civil service examination is intended to test relative merit, the kind of examination employed here, calculated to determine and test the discernment and judgment of the candidates in making a selection of the best of several alternatives, is peculiarly appropriate. The entire virtue of such an examination, however, lies in the existence of an objectively best answer. It is obvious that if more than one answer to a question is accepted as best, an action which is antithetical, there is a denial of a rating based on relative merit.

"It can hardly be argued, therefore, that if a question is susceptible of a single best answer it is permissible to accept as best other answers which are not relatively as good. To give the Commission discretion to do so would be to tolerate a subjective standard or measure which is not permitted. The Commission should certainly be expected and required, therefore, to select the single best answer whenever it is objectively possible to do so. \*\*\*"

{¶ 14} State courts will generally not intervene in municipal civil service commission matters in the absence of an abuse of discretion. See Vaughn, Principles of Civil Service Law (1976), Section 3.5[4]. In Ohio, the administration of competitive examinations is a primary function of municipal civil service

commissions. See 1 Gotherman & Babbitt, Ohio Municipal Law (2 Ed.1992) 167, Section T 10.09. As in other states, Ohio courts have held that municipal civil service commissions possess broad discretion regarding competitive promotional examinations. See, *e.g., Local No. 67, Internatl. Assn. of Firefighters v. Columbus* (Nov. 17, 1987), Franklin App. No. 86AP-428, unreported, *Underwood v. Bellefontaine* (1939), 64 Ohio App. 205, 18 O.O. 70, 28 N.E.2d 663. In extraordinary writ cases, courts will not substitute their judgment for that of the municipal civil service commission when the commission properly exercised its discretion. See *State ex rel. Ohio Assn. of Pub. School Emp. v. Girard Civ. Serv. Comm.* (1976), 45 Ohio St.2d 295, 297, 74 O.O.2d 463, 464, 345 N.E.2d 58, 60.

{¶ 15} Although question 11 of the Brook Park police lieutenant promotional examination is perhaps not a paragon of civil service test drafting, the commission did not abuse its broad discretion in relying on the test preparer's citation of the following excerpt from Principles of Police Patrol to support the accepted response to the question:

"*** Criminals have a saying that police officers look everywhere but up, and so they frequently hide on roofs of sheds, patios, coverings of barbeques, etc."

{¶ 16} An abuse of discretion implies an attitude that is unreasonable, arbitrary, or unconscionable. See *Rock v. Cabral* (1993), 67 Ohio St.3d 108, 112, 616 N.E.2d 218, 222. The foregoing excerpt from an examination source book supports the commission's decision to reject Brenders's protest. Since there is adequate authority for the answer given by Hall as the "best answer," this court "may not substitute its opinion for that of the [commission] because a difference of opinion may exist as to which answer is the 'most acceptable.'***" *Gulotta v. Falk* (1959), 9 App.Div.2d 580, 189 N.Y.S.2d 615, 617.

**{¶ 17}** Accordingly, Brenders has failed to establish either that the office of Brook Park police lieutenant is being unlawfully held by Hall or that he is entitled to Hall's position. Brenders's request for a writ of quo warranto is denied.[1]

*Writ denied.*

DOUGLAS, WRIGHT, RESNICK, F.E. SWEENEY and PFEIFER, JJ., concur.

MOYER, C.J., and COOK, J., concur in part and dissent in part.

_____

**COOK, J., concurring in part and dissenting in part.**

**{¶ 18}** Although I concur with the court's opinion, I believe it illustrates the absence of good ground to support this action for an extraordinary writ. I would, *sua sponte*, find the filing of this action to be a violation of Civ.R. 11 and impose sanctions of $500 on counsel for relator. Had opposing counsel moved before judgment for an award of fees, I would have granted the sanction of payment of the respondents' reasonable attorney fees.

MOYER, C.J., concurs in the foregoing opinion.

_____

---

1. Respondents' main argument against Brenders's claim for extraordinary relief, which they raised in their brief on the merits rather than via a motion to strike, is that most, if not all, of Brenders' submitted evidence is inadmissible and thus not properly before the court. Contrary to Brenders's contention in his reply brief, evidence submitted under the Supreme Court Rules of Practice in an original action in this court should comport with the Rules of Evidence. See Staff Note to Evid.R. 101(A) (Evidence Rules may be applicable to "a proceeding in the Supreme Court, as where the Court hears an action on original jurisdiction based on an extraordinary writ"); *State ex rel. Taft v. Franklin Cty. Court of Common Pleas* (1992), 63 Ohio St.3d 190, 192-193, 586 N.E.2d 114, 116 (court granted respondents' motion to strike exhibits in prohibition action where they were to be held not properly authenticated). Brenders claims, *inter alia*, that since respondents city of Brook Park, its civil service commission, and its police department provided him with those exhibits in an attempted civil service appeal of the commission's decision, they waived any objection to their authentication or admissibility in *this* action. Nevertheless, based upon our disposition of Brenders's claims, even assuming, *arguendo*, the propriety of his submitted evidence, Brenders's action in quo warranto fails.