DECISION AND JUDGMENT ENTRY
This matter is before the court on appeal from the Lucas County Court of Common Pleas wherein a jury found appellant, Shamus Groom, guilty of murder.
A trial commenced on February 7, 2000. Sarah Okenka testified that on November 28, 1998, she was visiting her mother at 3544 Elm Street in Toledo, Ohio when Steven Johns was shot. Okenka testified that Johns resided at her mother's house. Okenka was watching television when four men came to the front door looking for Steven Johns. Okenka heard one of the men ask Johns if he had any marijuana. One of the men then pulled out a gun and pointed it at Steven Johns' head. Johns denied he had any marijuana and demanded that the man remove the gun from his head. Afraid, Okenka testified that she ran into another room. As she was running, she heard a gunshot but did not see who pulled the trigger. She then heard people running upstairs. Okena was running away from the house when she heard another gunshot. She ran to a neighbor's house and called the police. At trial, Okenka identified appellant, Shamus Groom, as the man who held a gun to Steven Johns' head.
Jeromy Caperton testified that Steven Johns was his best friend. Caperton testified that on November 28, 1998, he was present at the Elm Street home of Steven Johns. Caperton was waiting for Johns to get ready so the two of them could go to a bar. Four men arrived looking for Johns. Caperton only knew one of the men as Keith Hubble. Caperton testified they asked him how much Johns charged for a half ounce of marijuana. Caperton told them he did not know. Minutes later, Johns came down from the upstairs of the house. Johns began talking to the four men. Caperton testified he did not know what the men were talking about but he did hear Johns attempt to get the men to leave. In response, Caperton walked out of the house onto the front porch. Johns went back inside and asked the men to leave again. Caperton testified he heard one of the men refuse to leave. When he looked inside he saw one of the men, who was wearing a green coat, wrestling with Johns. Caperton then heard a gunshot. He testified that he immediately ran from the front porch into the backyard where he heard more gunshots. At trial, Caperton identified appellant as the man in the green coat who was wrestling with Steven Johns.
Mindi Milan testified that on November 28, 1998, she was at a Toledo apartment with her boyfriend, Jessie Collins. Also at the apartment was appellant, Cecil Koger, Jessica Brown and Keith Hubble. Milan testified she heard the men say they wanted to go buy marijuana. The four men left. Appellant and Koger soon returned. Milan testified the two men appeared "jumpy" and said they wanted to take Milan and Jessica Brown home. Milan testified that on the way home, she heard appellant say that "he [appellant] shot him downstairs." Afterwards, they went upstairs where "Cecil shot him * * * three, four times."
Appellant testified that he went to the Elm Street home on November 28, 1998 to buy marijuana. When he arrived he was introduced to Steven Johns. Appellant asked Johns for a price on the marijuana. Johns quoted him a price of $60. Appellant testified he gave Johns $60 thinking that Johns had the marijuana in the house. Johns then informed him that he had to go somewhere else to get the marijuana. Appellant testified that he became concerned that Johns was going to steal his money. Appellant demanded his money back and appellant refused to give it to him. Appellant testified he became "aggravated" and pulled out a gun. He once again demanded his money back. At that point, appellant testified, that Johns attempted to grab the gun out of appellant's hand. This action resulted in a struggle between the two men. Appellant then heard the gun discharge. Appellant testified he did not think that anyone had been shot. After the gunshot, Johns ran upstairs with appellant following him. Appellant testified he was no longer holding a gun. The two men were continuing their struggle upstairs when appellant heard two or three gunshots. Appellant testified he turned to see Cecil Koger holding a gun.
Lucas County Deputy Coroner Diane Scala Barnett testified that Steven Johns died as a result of multiple gunshots wounds he sustained on November 28, 1998.
On December 8, 1998, appellant was indicted on one count of aggravated murder with a firearm specification and one count of aggravated robbery with a firearm specification. Later, the state amended the indictment to include a charge of complicity.
A jury found appellant guilty of murder with a firearm specification on February 14, 2000. He was sentenced to fifteen years to life in prison with a consecutive three year sentence for the firearm specification. Appellant now appeals setting forth the following assignments of error:
 "I. THE TRIAL COURT ERRED, WHEN IT PREVENTED THE DEFENDANT FROM ADMITTING CODEFENDANT'S STATEMENT AGAINST PENAL INTEREST. THIS STATEMENT WAS EXCULPATORY OF THE DEFENDANT-APPELLANT. THEREFORE, THE DEFENDANT-APPELLANT WAS DENIED DUE PROCESS.
 II. THE TRIAL COURT ERRED WHEN IT ORDERED THE DEFENDANT-APPELLANT TO PAY COURT-APPOINTED COUNSEL'S FEES.
 III. DEFENDANT-APPELLANT'S CONVICTIONS ARE NOT SUPPORTED BY SUFFICIENT EVIDENCE AND ARE THEREFORE A DENIAL OF DUE PROCESS.
 IV. DEFENDANT-APPELLANT'S CONVICTIONS ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
In his first assignment of error, appellant contends the court erred in not admitting an exculpatory letter into evidence. Specifically, appellant sought to introduce a letter into evidence written by Cecil Koger to a friend. In the letter, Koger writes:
 "I still have to wait and go to trail [sic] on July 12 and after that I'll go to prison or some type of center/jail/pemm [sic] cause
 I'm guilty as fuck and everybody know it, but it cool cause I don't give a fuck about layin it down for 10 or more year as long as they don't hit me with that 20 to life bullshit."
Appellant contends that the letter was admissible as a hearsay exception under Evid.R. 804(B)(3) which states:
 "A statement that was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the declarant's position would not have made the statement unless the declarant believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement."
Before reaching the issue of hearsay, we must first determine whether or not the evidence at issue is relevant. Evid.R. 402 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 403 states: "[E]vidence which is not relevant is not admissible."
We conclude that the letter is inadmissible on the basis of relevancy. The evidence at trial shows that Steven Johns was shot by more than one person. The state presented evidence intended to show that appellant and Cecil Koger shot Steven Johns. In the letter, Koger does not proclaim himself to be the sole shooter. He merely admits to his own guilt without mentioning appellant's participation in the crime. The fact that Cecil Koger may have admitted his own guilt in the letter has no bearing on appellant's culpability, and, therefore, the letter is not relevant evidence. Accordingly, the court did not err in refusing to allow the admission of the letter into evidence. Appellant's first assignment of error is found not well-taken.
In his second assignment of error, appellant argues that the trial court committed plain error in ordering him to pay appointed counsel costs without first making a finding that he was, or would likely become, able to do so as required by R.C. 2941.51(D).
This court, in State v. Brown (Nov. 19, 1999), Lucas App. No. L-97-1332, held that a trial court must make an affirmative determination on the record in the form of a journal entry, that the defendant has, or reasonably may be expected to have, the means to pay all or some part of the cost of the court appointed legal services rendered to him. CitingGalion v. Martin, (Dec. 12, 1991), Crawford App. No. 3-91-6, unreported.
The state concedes that the trial court in this case failed to make an affirmative determination on the record regarding appellant's ability to pay the cost of his court appointed counsel. However, the state contends that because the transcript of appellant's sentencing contains no reference to appellant's attorney fees, the court never ordered appellant to pay for his counsel. Therefore, the court did not err in failing to make an affirmative determination regarding appellant's ability to pay. We disagree.
It is well-settled that a court of record speaks only through its journal. State ex rel. Hanley v. Roberts (1985), 17 Ohio St.3d 1. The journal entry of appellant's sentencing states in pertinent part: "Defendant ordered to pay any costs of prosecution, including any fees associated with the appointment of counsel." In that the court failed to make an affirmative determination of appellant's ability to pay his court appointed counsel fees, appellant's second assignment of error is found well-taken.
We will address appellant's third and fourth assignments of error together because both challenge the quality of the evidence supporting his conviction. Appellant claims that his murder conviction was not supported by sufficient evidence and was contrary to the manifest weight of the evidence. Weight of the evidence indicates that the greater amount of evidence supports one side of an issue more than the other.State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting Black's Law
Dictionary (6 Ed. 1990) 1594. The Ohio Supreme Court has defined the standard we must use to review whether the manifest weight of the evidence sustains a conviction:
 "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a `thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." Id. at 387, citing Tibbs v. Florida (1982), 457 U.S. 31, 42.
To determine whether this is an exceptional case where the evidence weighs heavily against conviction, an appellate court must review the record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. Id., quoting State v. Martin (1983),20 Ohio App.3d 172, 175. Only if we conclude that the jury clearly lost its way in resolving conflicts in evidence and created a manifest miscarriage of justice will we reverse the conviction and order a new trial. Id.
The concept of manifest weight of the evidence is distinguished from sufficiency of the evidence. State v. Jenks, 61 Ohio St.3d 259. Sufficiency of the evidence is the legal standard to test whether the evidence introduced at trial is legally sufficient or adequate as a matter of law to support a verdict. State v. Thompkins,78 Ohio St.3d at 386. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus, following Jackson v. Virginia (1979), 443 U.S. 307. The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of fact.Jenks, at 273. If the court determines that the evidence is insufficient as a matter of law, a judgment of acquittal may be entered for the defendant. See Thompkins, supra, at 386.
Even though supported by sufficient evidence, a conviction may still be reversed as being against the manifest weight of the evidence.Thompkins, Id. In so doing, the court of appeals sits as a "thirteenth juror", and after reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Id., citation omitted. Determinations of witness credibility are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
Appellant was convicted of violating R.C. 2903.02(A). The elements of that offense are as follows: "[N]o person shall purposely cause the death of another or the unlawful termination of another's pregnancy."
The evidence presented at trial shows that appellant went to the victim's house and purposely pointed a gun at the victim. Though appellant testified that he did not think the victim was shot during their struggle for the gun downstairs, a Toledo Police officer who arrived shortly after the shooting testified that she saw a trail of blood from the downstairs of the house to the upstairs bedroom where the victim was found. This court has thoroughly reviewed the record of proceedings in the trial court, and upon consideration thereof, finds there was no evidence that the jury lost its way or created a manifest miscarriage of justice. Accordingly, appellant's third and fourth assignments of error are found not well-taken.
On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed in part and reversed and remanded in part. The portion of the judgment ordering that appellant pay court-appointed attorney fees is vacated, and the judgment is affirmed in all other respects. Costs assessed to appellant.
JUDGMENT AFFIRMED, IN PART, AND REVERSED, IN PART.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Peter M. Handwork, J., James R. Sherck, J. CONCUR.