OPINION AND JOURNAL ENTRY
{¶ 1} Both Relator Nick Levinsky and respondent Donald Lamping move for summary judgment in this original action for quo warranto. The issue presented to this court is whether summary judgment should be granted for either party. For the following reasons summary judgment is granted for Respondent Lamping.
 STATEMENT OF THE FACTS AND CASE {¶ 2} In April and June of 2002, the Boardman Township Civil Service Commission (Boardman) administered a competitive promotional exam for the position of Lieutenant on the Boardman Township Police Department. The applicants achieving the three highest scores would be promoted to Lieutenant.
 {¶ 3} Levinsky and Lamping, both ranked sergeant (at the time of the exam) on the Boardman Township Police Department, competed in this promotional exam. Lamping finished in third place, while Levinsky finished in fourth place. Accordingly, Lamping was promoted to the rank of Lieutenant, while Levinsky was not.
 {¶ 4} On February 19, 2003, Levinsky brought a declaratory judgment action in Mahoning County Common Pleas Court against Boardman and Lamping, seeking, in short, a judgment finding that Boardman erred in grading the promotional exam, and that instead of Levinsky finishing fourth, if the exam would have been graded properly, Levinsky would have finished third. He also sought an injunction ordering Boardman to promote him to the rank of Lieutenant.
 {¶ 5} The trial court dismissed the complaint finding that Levinsky failed to exhaust his administrative remedies. Levinsky appealed that decision. Levinsky v. Boardman Twp. Civ. Serv.Comm., 7th Dist No. 04MA36, 2004-Ohio-5931. On appeal, we affirmed the trial court's ruling, but stated that the trial court should have dismissed the complaint for lack of subject matter jurisdiction. Id. We explained that quo warranto is the exclusive proceeding to test the actual right to an office. Id. at ¶ 27. As the Ohio Constitution vests courts of appeals with original jurisdiction and the Ohio Supreme Court with concurrent jurisdiction for quo warranto actions, the proper avenue for the relief he requested in the declaratory judgment action was filing a quo warranto with this court or the Ohio Supreme Court. Id. at 27-34.
 {¶ 6} On April 25, 2005, Levinsky filed a petition for writ of quo warranto with this court. The petition seeks the ouster of Lamping from the rank of Lieutenant and the promotion of himself to that position. The petition claims that Boardman did not grade the exam correctly. Specifically, it contends that instead of adding the scores of the two-part promotional test, Boardman, by its own rules, was required to average the scores. Furthermore, Levinsky's petition claims that the point valuations for seniority were incorrect. He claims that instead of being done by points, it should have been done by percentages as is mandated by the Revised Code. He is claiming that Boardman's rules on seniority are inconsistent with the Revised Code's rules on seniority.
 {¶ 7} Lamping answered the petition claiming, among other defenses, that he may only be removed for cause pursuant to R.C.124.34. Motions for summary judgment were then filed by each party.
 {¶ 8} Lamping filed his motion on July 19, 2005. Lamping's motion contends that he is entitled to judgment as a matter of law because procedurally Levinsky did not protect his right to oust him. Specifically, he cites to five Ohio Supreme Court cases which, according to him, hold that a person seeking quo warranto cannot oust a good faith appointee unless affirmative action is taken by the person seeking to oust the good faith appointee. According to him, an affirmative action can happen one of two ways. First, a candidate may challenge a civil service appointment by seeking and maintaining an injunction to prevent a good faith appointee's permanent appointment, and then file an action in quo warranto during the pendency of the injunction. Or, second, the candidate may forego injunction relief and simply file an action in quo warranto during a good faith appointee's probationary period. Lamping contends that Levinsky did neither of the two above. Thus, according to Lamping, even if it is assumed that the test was improperly graded, summary judgment should still be granted in his favor.
 {¶ 9} Levinsky filed his motion for summary judgment on July 25, 2005. Instead of addressing Lamping's reasons as to why summary judgment should be granted in his favor, Levinsky simply argues that looking at Boardman's rules and doing simple math, shows that summary judgment should be granted for him.
 LAW AND ANALYSIS {¶ 10} Summary judgment is properly granted when: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and, (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. Harless v. Willis Day Warehousing Co. (1978),54 Ohio St.2d 64, 66; Civ.R. 56(C).
 {¶ 11} Thus, when considering the above arguments on summary judgment, the first issue for this court to decide is whether Lamping is correct in his interpretation of the law on quo warranto. Or, in other words, was Levinsky required to take an affirmative action in order to protect his right to oust Lamping?
 {¶ 12} As stated above, Lamping cites to five Ohio Supreme Court cases for the proposition that an affirmative action was required to be taken by Levinsky to protect his right to oust Lamping. The first case is State ex rel. Byrd v. Sherwood
(1942), 140 Ohio St. 173.
 {¶ 13} In Byrd, it was discovered that 71 individuals on a 133 person eligible list for 42 investigator positions had been persuaded, by assurances of later favorable attitude and consideration of the appointing power and indications of probable disfavor and unfriendly attitude of the appointing power, to sign waivers of their right to priority and appointment of such positions. The civil service commission sought to revoke a number of the certifications, including Relators' certifications.
 {¶ 14} Relators' argued that they had been appointed to their positions from a duly certified list of eligibles and having accepted the appointment and satisfactorily served more than the 90-day probationary period, they had become vested with tenure in the position. Thus, it was their position that they could only be removed for cause.
 {¶ 15} In agreeing with Relators' argument, the Ohio Supreme Court stated:
 {¶ 16} "The original list certified was concededly a list of persons, all of whom were then eligible for appointment. The names of the relator and relatrix were on such list and their appointment by the respondents was thereby authorized and accordingly made. An incorrect certification undoubtedly may be corrected, but this correction cannot be employed to remove employees who theretofore had been appointed pursuant to such certification and who, through satisfactory service for the required period, had acquired a status of members of the classified service of the state. Being in the classified service, they may not be summarily dismissed." Id. at 180-181 (internal citations omitted).
 {¶ 17} The Supreme Court then reaffirmed this ruling and added a good faith element to the test in State ex rel. Mikus v.Hirbe (1966), 7 Ohio St.2d 104. In Mikus, the prosecuting attorney of Lorain County brought actions in quo warranto in the appellate court to test by what authority the seven Respondents held their positions in the Lorain Police Department. This action was taken after it was discovered that the Lorain Civil Service Commission did not take efficiency rating into account in determining which examinees should be certified. Relator sought the ouster of Respondents and asked that the examination be declared a nullity and a new examination be held. It was stipulated by the parties that each of the Respondents had satisfactorily completed their probationary period.
 {¶ 18} The Court phrased the question presented to it as follows:
 {¶ 19} "The question thus presented is whether the respondents who took the written examination in good faith, who were certified by the Lorain commission and who were appointed to their positions where they have satisfactorily served should be peremptorily ousted because of a dereliction of duty on the part of the Lorain commission, which was unknown to the respondents." Id. at 106.
 {¶ 20} In answering the above question in the negative the Court held:
 {¶ 21} "Therefore, since the appointees in the cases at bar took the examinations in good faith and did everything on their part to comply with the civil service laws and did satisfactorily complete their probationary periods, they can be removed only for cause pursuant to Section 143.27 of the Revised Code." Id. at 107.
 {¶ 22} This good faith rule is further explained by the Ohio Supreme Court in State ex rel. Polen v. Wymer (1973),36 Ohio St.2d 24. In Polen, Wymer, Polen, and a third party took a competitive promotion civil service examination. The person who scored the highest would be appointed to the position of assistant fire chief. On the written exam and seniority credit, Wymer and Polen received the same scores. However, on the efficiency credit Wymer received 10%, while Polen received 9.8%. Thus, Wymer was appointed to the position of assistant fire chief.
 {¶ 23} Polen appealed the decision to the Civil Service Commission complaining of the illegal and improper use of the efficient credits in computing grades. That appeal was denied. Polen then appealed to the Common Pleas Court. That court held that the efficiency credits had been improperly applied, and it directed the commission to recompute the grades for the examination solely upon the basis of the written examination and seniority credits. Given that holding, Polen and Wymer's scores were tied. As such, Polen claimed that he must also be certified.
 {¶ 24} However, the appointing authority did not certify him. Thus, Polen filed the action for quo warranto alleging that he was entitled to the position of assistant fire chief. The appellate court denied the writ. Polen appealed to the Supreme Court.
 {¶ 25} The Supreme Court in affirming the appellate court's denial of the writ explained:
 {¶ 26} "[R]espondent was appointed to the position of assistant fire chief on June 14, 1971, effective June 10, 1971, eleven days after relator appealed the grading to the commission. His appointment was made permanent on December 15, 1971, over six months after the ruling of the Civil Service Commission was appealed to the Common Pleas Court. So, as the relator was perfecting his appeals in an attempt to overturn the grading by which respondent was certified for the office they sought, respondent was securing his hold on the office. Relator took no legal action to stop respondent." Id. at 26-27.
 {¶ 27} Furthermore, the syllabus of the case states:
 {¶ 28} "Where a candidate is certified as having scored the highest grade in a promotional civil service examination that was not graded in full conformity with civil service law, and where it does not appear that the candidate so certified knew of or participated in the irregular grading, he will not be replaced by one bringing an action in quo warranto who failed to take affirmative action to prevent the certification and permanent appointment." Id. at 24.
 {¶ 29} Using this rule of affirmative action, in State exrel. Hanley v. Roberts (1985), 17 Ohio St.3d 1, Hanley was able to oust Workman from the position of chief of police. InHanley, Workman, a good faith appointee, was appointed to the position of chief of police after he purportedly scored highest on a civil service examination. Workman attained the second highest score. The city manager, Roberts, admitted that efficiency points were not counted in computing the examination scores.
 {¶ 30} Three days before Workman's probationary period was to expire, Roberts issued a letter which appointed him to office permanently. However, the next day, two days before the true expiration of the probationary period, Hanley filed a complaint in mandamus and for injunction relief to prevent modification of Workman's probationary status. The court granted a temporary restraining order forestalling Workman's permanent appointment. Prior to the termination of that order, Hanley filed a petition for quo warranto in the court of appeals.
 {¶ 31} Considering that the premature permanent appointment of Workman was ineffective and void, and the fact that an injunction was sought and maintained, the Ohio Supreme Court found that Hanley had fulfilled the affirmative action requirement. Id. at 6.
 {¶ 32} Later, in State ex rel. Delph v. Barr (1989),44 Ohio St.3d 77, the Ohio Supreme Court addressed the affirmative action holding under Polen and Hanley. In Delph, Delph argued that his prompt filing of the quo warranto petition was an affirmative action under Polen and Hanley. However, Barr argued that Polen and Hanley required more than a challenge to another's title through quo warranto. Specifically he argued that Delph had to file a quo warranto petition and either (1) secure an order enjoining Barr's permanent appointment or (2) obtain a stay of operation of the statute pending the outcome of his action.
 {¶ 33} In ruling in favor of Delph, the Ohio Supreme Court explained the Hanley decision. It stated:
 {¶ 34} "Hanley implicitly recognizes the availability of ancillary injunctive relief to maintain the status quo after a quo warranto action is filed. However, to recognize the availability of ancillary injunctive relief in quo warranto actions is not to say that it is required.
 {¶ 35} "In the circumstances at bar, we are not inclined to extend the holding in Hanley (and the cases which precedeHanley). A complaint in quo warranto was filed shortly after an improper civil service appointment. Therefore, we hold that Delph's complaint challenging Barr's title to office was sufficient to prevent Barr from securing a permanent hold on the office under R.C. 124.271." Id. at 80.
 {¶ 36} Thus, considering all the above holdings, it can be concluded that in order to secure one's right to relief under quo warranto that an affirmative action must be taken in order to oust a good faith appointee. Polen, 36 Ohio St.2d 24. This affirmative action could occur either by filing a quo warranto action after the improper civil service appointment, but before the good faith appointee completes his probationary period (before permanent appointment). Delph, 44 Ohio St.3d 77. Or the affirmative action could occur by seeking an injunction to prevent the good faith appointee's permanent placement and then filing a quo warranto during the pendency of the injunction.Hanley, 17 Ohio St.3d 1.
 {¶ 37} That said, this court must determine whether Lamping was a good faith appointee and whether Levinsky took an affirmative action as defined by the above case law. First, there is no genuine issue of material fact that Lamping was a good faith employee. Attached to the motion for summary judgment is Lamping's affidavit. In this, Lamping testifies "I [Lamping] did not participate in the grading of the Lieutenant's examination, and if the grading of the examination was improper, I [Lamping] was not aware of any improprieties in the grading process." (Lamping Aff. ¶ 2). Levinsky does not dispute this statement. Thus, for purposes of summary judgment it must be concluded that Lamping was a good faith appointee.
 {¶ 38} In regards to the affirmative action requirement, our analysis is twofold. We must determine whether Lamping acted in one of the two ways required for an affirmative action. As stated above, the first way affirmative action can be accomplished is to file the quo warranto action prior to the expiration of the probationary period. Given the record, Levinsky did not meet this requirement. The quo warranto action was filed with this court on April 25, 2005. Lamping's appointment to the rank of Lieutenant became permanent on June 3, 2003, after the successful completion of the probationary period. (Lamping Aff. ¶ 5). Thus, the quo warranto action was not filed within the probationary period.
 {¶ 39} Nevertheless, the affirmative action requirement may be met in another way. As explained earlier, affirmative action can be accomplished if Levinsky sought an injunction to prevent Lamping's permanent placement. On February 19, 2003, Levinsky filed a complaint asking for declaratory judgment and injunctive relief. Levinsky, 2004-Ohio-5931, at ¶ 4. However, the injunction he sought was for the court to order Boardman and the Township to promote him to the rank of Lieutenant, to enjoin Boardman from further disregarding its own rules and regulations, and any other relief that the court deemed appropriate. Id. at ¶ 10-12. Absent from this list is an injunction seeking to oust Lamping or an injunction preventing Lamping from obtaining a permanent appointment. See id. at ¶ 31 (indicating that Levinsky had not yet sought the removal of Lamping). As the Supreme Court stated in Polen:
 {¶ 40} "[I]t was the relator's duty to seek appropriate relief to prevent respondent from further securing his claim to the office, by such means as enjoining the certification and the appointment or obtaining a stay of the proceedings pending the outcome of the appeals." Polen, 36 Ohio St.2d at 27.
 {¶ 41} Accordingly, since Levinsky did not seek the appropriate relief in Mahoning County Common Pleas Court in the declaratory/injunctive relief action, he cannot now be afforded the relief he requests.
 {¶ 42} In conclusion, Levinsky needed to either file his quo warranto relief prior to the expiration of Levinsky's probationary period, or seek an injunction from the common pleas court to prevent Levinsky from obtaining his permanent status. As he did neither, summary judgment must be granted for Lamping.
 {¶ 43} Having come to that determination, we must now clarify our prior decision in Levinsky. In paragraph 25 of the opinion we stated that an action for injunctive relief was improper. As is explained above, one way to secure one's right to the relief under quo warranto is to seek and obtain an injunction to prevent a good faith appointee's permanent appointment, and then during the injunctive period file an action in quo warranto. Thus, our statement that an action for injunction relief was improper was not completely accurate.
 {¶ 44} Furthermore, our previous opinion states, "Levinsky is not without a remedy however since an action in quo warranto where all proper parties are given notice may be filed within three years after the cause of such ouster, or the right to hold office, arose." Levinsky, 2004-Ohio-5931, at ¶ 34. This also was not an accurate statement. While a quo warranto action must be filed within three years after the right to hold office arises, as was explained above, Levinsky was also required to take an appropriate affirmative action prior to Lamping's permanent appointment. Lamping's permanent appointment occurred on June 3, 2003. The Levinsky decision was released on October 29, 2004. Levinsky had taken no action to prevent Lamping's permanent appointment, nor did he file the quo warranto action prior to Lamping's permanent appointment. Thus, Levinsky was without remedy. Our prior opinion was incorrect in stating that Levinsky was not without remedy.
 {¶ 45} For the foregoing reasons, Lamping's motion for summary judgment is granted, while Levinsky's motion for summary judgment is denied. Complaint in Quo Warranto dismissed.
 {¶ 46} Final Order. Clerk to serve notice to the parties pursuant to the Civil Rules. Costs taxed against Relator.
Vukovich, J., concurs. Donofrio, P.J., concurs. Waite, J., concurs.