**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as**
*State ex rel. Flanagan v. Lucas*, **Slip Opinion No. 2014-Ohio-2588.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2014-OHIO-2588

THE STATE EX REL. FLANAGAN *v.* LUCAS, SHERIFF.

**[Until this opinion appears in the Ohio Official Reports advance sheets,**

**it may be cited as *State ex rel. Flanagan v. Lucas*,**

**Slip Opinion No. 2014-Ohio-2588.]**

*Quo warranto—R.C. 2733.06—Relator lacks standing to maintain quo warranto action against sheriff because he does not have reasonable grounds to claim entitlement to the office of sheriff—Cause dismissed.*

(No. 2013-0239—Submitted November 19, 2013—Decided June 18, 2014.)

IN QUO WARRANTO.

_____

**Per Curiam.**

{¶ 1} In this quo warranto case, relator, Dick Flanagan, challenges the qualifications of respondent, David Lucas, who was elected to the office of Belmont County sheriff and sworn in on January 7, 2013. Flanagan claims that Lucas did not meet the qualifications to be a candidate for sheriff under R.C. 311.01, because he had not been a full-time peace officer since he retired in October 2007 and had also not held a qualifying supervisory position. Flanagan

also asserts that as the only candidate on the ballot in November 2012 who did qualify under R.C. 311.01, he is entitled to the office. In response, Lucas claims that as the losing candidate, Flanagan is not entitled to the office and therefore lacks standing to bring this quo warranto case. He also claims that he did meet the requirements of R.C. 311.01 to be a candidate for sheriff on the 2012 ballot.

{¶ 2} Because Flanagan lacks standing under R.C. 2733.06, we dismiss the cause.

*Facts*

{¶ 3} At the general election in Belmont County on November 6, 2012, Lucas defeated Flanagan and was elected Belmont County sheriff. Before and after the election, however, Lucas's candidacy was subject to several challenges by various parties.

{¶ 4} As part of the qualification process under R.C. 311.01, a Belmont County Common Pleas Court judge forwarded candidate applications for Lucas and Flanagan to the Belmont County Board of Elections. On December 19, 2011, the board certified all candidate applications, including Lucas's and Flanagan's, for the primary to be held in March 2012.

{¶ 5} On December 23, 2011, the board received a protest from then-sheriff Fred Thompson, a Democrat, challenging the eligibility of Lucas, a Republican, to run for sheriff under R.C. 311.01(B)(8)(a) and 311.01(B)(9)(a). On January 24, 2012, the board dismissed Thompson's challenge because R.C. 3513.05 allows a protest only by a member of the same political party as the candidate in question. At the general election on November 6, 2012, Lucas defeated Flanagan. On November 27, 2012, the board certified the general-election results.

{¶ 6} On December 14, 2012, the board received two letters protesting Lucas's qualifications as a candidate for sheriff, one filed by Mark Landers

(Flanagan's counsel) and the other by Gary Landers. On December 17, 2012, the board determined that the protests were invalid and untimely.

{¶ 7} On December 28, 2012, the board received a written request from Flanagan asking that the board investigate Lucas's qualifications or that it file a complaint for a writ of quo warranto. The board did not act on this request.

{¶ 8} Flanagan also requested that the prosecuting attorney of Belmont County file an action in quo warranto, but the prosecutor also refused.

{¶ 9} Flanagan filed this quo warranto action on February 8, 2013. Flanagan's complaint asserts that Lucas did not meet the mandatory qualifications of R.C. 311.01 for a candidate for county sheriff. Flanagan asserts that Lucas has unlawfully usurped the office of sheriff, possessing the office contrary to law and the rights of Flanagan.

{¶ 10} Flanagan further asserts that he, as the only person appearing on the ballot in the November 6, 2012 election who satisfied the statutory qualifications, is entitled to the office. Flanagan argues that he is entitled to a writ of quo warranto removing Lucas from office and declaring Flanagan sheriff of Belmont County.

{¶ 11} We issued an alternative writ on June 26, 2013, and the parties submitted evidence and briefs.

*Analysis*

{¶ 12} Quo warranto is the exclusive remedy to litigate the right of a person to hold a public office. *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 20; *see also State ex rel. Ebbing v. Ricketts*, 133 Ohio St.3d 339, 2012-Ohio-4699, 978 N.E.2d 188, ¶ 8, citing *State ex rel. Johnson v. Richardson*, 131 Ohio St.3d 120, 2012-Ohio-57, 961 N.E.2d 187, ¶ 15. In quo warranto, judgment may be rendered on the right of the defendant to hold the contested office *and* the right of the person alleged to be

entitled to hold the office " 'or only upon the right of the defendant, as justice requires.' " (Emphasis deleted.) *Deiter* at ¶ 22, quoting R.C. 2733.08.

{¶ 13} "To be entitled to the writ of quo warranto, the relator must establish that the office is being unlawfully held and exercised by respondent and that relator is entitled to the office." *State ex rel. Zeigler v. Zumbar*, 129 Ohio St.3d 240, 2011-Ohio-2939, 951 N.E.2d 405, ¶ 23. Here, Flanagan asserts both that the office is being unlawfully held and exercised by Lucas, and that Flanagan is entitled to the office.

{¶ 14} As to the legality of Lucas's holding the office, the complaint alleges that Lucas does not meet the requirements of R.C. 311.01(B)(8) and (9). Specifically, Flanagan alleges that Lucas had not held a job as a full-time peace officer within the four years immediately prior to the qualification date (December 7, 2011) and thus failed to meet the qualifications under R.C. 311.01(B)(8)(a). Moreover, Flanagan alleges that Lucas did not have two years of peace-officer supervisory experience in the five years immediately prior to December 7, 2011, and thus failed to meet the requirement under R.C. 311.01(B)(9)(a). In response, Lucas argues that he was a qualified candidate because he met the requirements in R.C. 311.01(B)(8)(a) and 311.01(B)(9)(a).

{¶ 15} Flanagan also asserts that he is entitled to the office because he "lawfully appear[ed] on the November 6, 2012 ballot as the only duly qualified candidate." Lucas responds that Flanagan lacks standing to bring this action because he was the losing candidate on the ballot and thus cannot claim in good faith that he is entitled to the office of sheriff.

{¶ 16} We address the standing issue first.

{¶ 17} "Standing is a preliminary inquiry that must be made before a court may consider the merits of a legal claim." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9. "A party lacks standing to invoke the jurisdiction of the court unless he has, in an individual or

representative capacity, some real interest in the subject matter of the action." (Emphasis added.) *State ex rel. Dallman v. Franklin Cty. Court of Common Pleas*, 35 Ohio St.2d 176, 298 N.E.2d 515 (1973), syllabus. " '[T]he inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff.' " *State ex rel. E. Cleveland Fire Fighters' Assn., Local 500, Internatl. Assn. of Fire Fighters v. Jenkins*, 96 Ohio St.3d 68, 2002-Ohio-3527, 771 N.E.2d 251, ¶ 11, quoting *Sierra Club v. Morton*, 405 U.S. 727, 732, 92 S.Ct. 1361, 31 L.Ed.2d 636 (1972).

{¶ 18} An action in quo warranto against a public official must be brought by the attorney general or a prosecuting attorney, R.C. 2733.05, or by a person claiming to be entitled to the public office unlawfully held and exercised by another, R.C. 2733.06. After Flanagan lost the 2012 election, he asked the Belmont County prosecutor to file an action in quo warranto seeking the ouster of the elected Belmont County sheriff, David Lucas, but the prosecutor refused. Flanagan then filed this quo warranto action under R.C. 2733.06, claiming "entitlement to the office of Belmont County sheriff" as "the only qualified candidate" on the November 6, 2012 ballot.

{¶ 19} R.C. 2733.06 sets forth the standing requirement for a private citizen to file the action. It authorizes a "person claiming to be entitled to a public office unlawfully held and exercised by another" to bring an action in quo warranto.

{¶ 20} In *State ex rel. Halak v. Cebula*, 49 Ohio St.2d 291, 361 N.E.2d 244 (1977), we set out the two requirements for a relator to bring an action in quo warranto:

"[H]e must show not only that he is entitled to the office, but also that it is unlawfully held and exercised by the defendant in the action." *State ex rel. Heer v. Butterfield* (1915), 92 Ohio St. 428,

111 N.E. 279, paragraph one of the syllabus; *State ex rel. Lindley*
*v. The Maccabees* (1924), 109 Ohio St. 454, 142 N.E. 888; *State ex*
*rel. Smith v. Nazor* (1939), 135 Ohio St. 364, 21 N.E.2d 124.

*Id.* at 292. We emphasized that the claim of the individual asserting entitlement to the office must be made in " 'good faith and upon reasonable grounds.' " *Id.* at 293, quoting *State ex rel. Ethell v. Hendricks*, 165 Ohio St. 217, 135 N.E.2d 362 (1956), paragraph three of the syllabus.

**{¶ 21}** The question presented in *Halak*—whether the relator's claim to an office was made in good faith and on reasonable grounds—is the same one presented here. In *Halak*, this court, relying on *State ex rel. Haff v. Pask*, 126 Ohio St. 633, 186 N.E. 809 (1933); *Prentiss v. Dittmer*, 93 Ohio St. 314, 327, 112 N.E. 1021 (1916); *State ex rel. Sheets v. Speidel*, 62 Ohio St. 156, 56 N.E. 871 (1900); and *Renner v. Bennett*, 21 Ohio St. 431 (1871), observed:

> "Where the candidate receiving the highest number of votes is ineligible to election, the candidate receiving the next highest number of votes for the same office is not elected. Only the eligible candidate who receives the highest number of votes for the office for which he stands is elected to such office."

*Halak* at 293, quoting *Haff* at paragraph three of the syllabus. Consequently, we held that the relator did not have standing:

> Under these cases, *there are clearly no reasonable grounds*
> *for the relator's claim* that he is entitled to the respondent's office.
> A mere possibility of appointment does not constitute entitlement

in any way. Accordingly, the Court of Appeals was correct in its dismissal of the complaint.

(Emphasis added.) *Id.*

{¶ 22} Therefore, applying *Halak* and its forebears, we hold that Flanagan has no reasonable grounds to assert entitlement to the office. Flanagan cannot show even the possibility of entitlement to the office of sheriff for two reasons. First, R.C. 305.02 directs that any vacancy in the office of sheriff must be filled by appointment. Second, case law holds that the candidate rejected by the voters is not deemed the officeholder even if the successful candidate is ineligible; therefore, a person so situated does not have reasonable grounds to claim entitlement to the office and thus does not have standing to bring a quo warranto action. *Halak,* 49 Ohio St.2d at 293, 361 N.E.2d 244.

{¶ 23} This is not to say that a person who brings a quo warranto case in good faith and on reasonable grounds will automatically replace the incumbent if he or she is ousted. We have held that "a relator need not prove his own title beyond all doubt. He need only establish his claim 'in good faith and upon reasonable grounds.' " *State ex rel. Hanley v. Roberts*, 17 Ohio St.3d 1, 6, 476 N.E.2d 1019 (1985), quoting *Ethell,* 165 Ohio St. 217, 135 N.E.2d 362, at paragraph three of the syllabus. If the relator makes that showing, then the court may render judgment on both the right of the respondent to hold the contested office *and* the right of the relator to hold the office or it may render judgment on only the respondent's right to hold the contested office. *Halak* at 293.

{¶ 24} For example, *Hanley* involved the fairness of a civil-service promotional exam for chief of police. There, we scrutinized the relator's claim of entitlement to the office before addressing whether the incumbent lawfully held the position. Quoting *Ethell* and *Halak*, we held that the relator need not establish

his claim to the position beyond all doubt. He need only establish that his claim was made with good faith and upon reasonable grounds. *Hanley* at 6.

{¶ 25} Hanley proved that his claim of entitlement to the office was made with good faith and upon reasonable grounds because he scored the second highest on the promotional exam, and the incumbent, who had received the highest score, had had an unfair advantage on the exam. Thus, if the incumbent's exam score was invalid, Hanley would automatically be entitled to the office. However, we ultimately voided the entire exam. *Id.* at 7.

{¶ 26} When filing his action in quo warranto in the court of appeals, Hanley had no idea that instead of declaring only the incumbent's exam score invalid this court would declare the entire promotional examination void. We noted that if the court had declared only the incumbent's score invalid, Hanley's "appointment would be more than a mere possibility. Under the statute, [his] appointment would be a certainty, because he is second on the list of eligibles." *Id.* at 7. By this language, we emphasized the importance of a relator's establishing that his or her claim to be entitled to the office must be made in good faith and upon reasonable grounds. Only after confirming relator's good-faith claim to the office did this court determine whether the incumbent lawfully held the office.

{¶ 27} Flanagan's situation is different. Under our precedent, Flanagan had no reasonable grounds for his claim to the office. *Halak*, 49 Ohio St.2d at 293, 361 N.E.2d 244.

{¶ 28} Because Flanagan lacks standing to bring this quo warranto action, we do not reach the issue of Lucas's qualifications for office.

### *Conclusion*

{¶ 29} Flanagan, as the losing candidate in the election, has no reasonable grounds to claim entitlement to the office of sheriff, and therefore he lacks standing to prosecute an action in quo warranto. We therefore dismiss the action.

Cause dismissed.

PFEIFER, O'DONNELL, and KENNEDY, JJ., concur.

FRENCH, J., concurs in judgment only.

O'CONNOR, C.J., and LANZINGER and O'NEILL, JJ., dissent.

_____

**KENNEDY, J., concurring.**

{¶ 30} I concur fully in the majority's opinion. I write separately to explain why the dissent is mistaken. The dissent laments that Lucas will remain Belmont County sheriff even though, according to the dissent, he is not qualified for the office. But to reach the merits of whether he is qualified, the dissent leaps over the first and fundamental requirement of a quo warranto case brought under R.C. 2733.06: that the challenger have a good-faith claim to the office. No matter how enticing the merits of a case, the merits do not justify allowing a party who lacks standing to bring it. *See Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 23 ("It is well settled that standing does not depend on the merits of the plaintiff's contention that particular conduct is illegal or unconstitutional. Rather, standing turns on the nature and source of the claim asserted by the plaintiffs"). Taking the dissent's rationale to its logical conclusion, *any* concerned citizen could bring a petition to oust a public officer. Neither the language of the quo warranto statutes nor our precedent authorizes the outcome that the dissent advances.

{¶ 31} The dissent confuses standing, a fundamental requirement for a court's jurisdiction in every case, with a rule allowing ouster in some quo warranto cases even though the relator is not ultimately entitled to office. An action in quo warranto may be brought by a person claiming to be entitled to a public office unlawfully held and exercised by another. R.C. 2733.06. However, that claim must be made " 'in good faith and upon reasonable grounds.' " *State ex rel. Halak v. Cebula*, 49 Ohio St.2d 291, 293, 361 N.E.2d 244 (1977), quoting

9

*State ex rel. Ethell v. Hendricks*, 165 Ohio St. 217, 135 N.E.2d 362 (1956), paragraph three of the syllabus. The dissent invokes *Ethell* but does not even mention its holding that good faith and reasonable grounds are fundamental requirements of quo warranto standing.

{¶ 32} In fact, the dissent completely ignores our precedent that quo warranto actions require a private relator to assert a right to the public office in good faith and upon reasonable grounds. It is true that R.C. 2733.08 says, "Judgment may be rendered upon the right of the defendant, and also on the right of the person averred to be so entitled, *or only upon the right of the defendant, as justice requires.*" (Emphasis added.) However, R.C. 2733.08 does not erase the standing requirement of R.C. 2733.06 as interpreted by our precedent that good faith and reasonable grounds are prerequisites to maintaining a quo warranto action. Statutes must be interpreted in a manner that gives them full effect. R.C. 1.47(B).

{¶ 33} The dissent does not dispute that Flanagan cannot claim the office of sheriff upon good faith and reasonable grounds. The statute regarding sheriffs is explicit that a vacancy in the office of sheriff is to be filled by appointment by the county central committee of the political party with which the last occupant of the office was affiliated. R.C. 305.02. Flanagan has no reasonable expectation of being appointed to the office, as he does not belong to the same political party. Furthermore, our precedent holds that where a candidate receiving the highest number of votes in an election is ineligible, the candidate receiving the next highest number of votes "is not elected" and cannot maintain an action in quo warranto. *Halak* at 293, quoting *State ex rel. Haff v. Pask*, 126 Ohio St. 633, 186 N.E. 809 (1933), at paragraph three of the syllabus. Flanagan has no more

standing in quo warranto than any concerned citizen who thinks that an elected officer is unqualified.[1]

{¶ 34} The dissent conflates the fundamental jurisdictional requirement of standing with the statute allowing a court to render judgment only on whether the incumbent should be removed from office, R.C. 2733.08. But this statute comes into play only after it is determined that the relator has standing, that is, once it is determined that the relator has a good faith belief based on reasonable grounds that he is entitled to the office. The best example of this situation is *State ex rel. Hanley v. Roberts*, 17 Ohio St.3d 1, 476 N.E.2d 1019 (1985), in which the relator, Hanley, had scored second-highest on a promotional exam and asserted that the highest scorer had had an unfair advantage on the test because it was substantially similar to the test he had taken previously. This court ultimately voided the entire exam. Thus, because Hanley had brought his action in good faith and upon reasonable grounds to believe that he was entitled to the office, the court was authorized to render judgment upon the right of the respondent to hold the office.

{¶ 35} Nor are the cases cited by the dissent apposite. The factual situation in *Ethell*, 165 Ohio St. 217, 135 N.E.2d 362, is virtually identical to that in *Hanley*: a promotional exam was declared void by the court, meaning that the relator, who argued that he had scored the highest on the exam, was not entitled to the office. This court held that the relator "had reasonable grounds to believe himself entitled to the position here in question, and * * * he began the action as expeditiously as could reasonably be expected, and in good faith." Thus, pursuant to R.C. 2733.08, the court proceeded to rule on the respondent's entitlement to the office.

---

[1] A quo warranto action under R.C. 2733.06 is not the only mechanism available to challenge a candidate's qualifications for office. A qualified elector who is a member of the same political party may bring a protest against the candidate to the board of elections before the election. R.C. 3513.05. The county prosecutor or the attorney general may bring a quo warranto action. R.C. 2733.04 and 2733.05. And, of course, nothing prevents a candidate for office from making truthful statements about his opponent's lack of qualifications for office during the campaign.

**{¶ 36}** The *Varnau* cases, *State ex rel. Varnau v. Wenninger*, 128 Ohio St.3d 361, 2011-Ohio-759, 944 N.E.2d 663, and *State ex rel. Varnau v. Wenninger*, 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790, did not discuss standing to bring a quo warranto action. Nor did *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, mention our long-held standing requirements of good faith and reasonable grounds to assert entitlement to the public office through quo warranto. Relying on these cases as precedent for a determination of standing in a quo warranto action is tantamount to a relator citing *State ex rel. Cleveland Right to Life v. State of Ohio Controlling Bd.*, 138 Ohio St.3d 57, 2013-Ohio-5632, 3 N.E.2d 185, as authority for standing in a mandamus or prohibition action.

**{¶ 37}** *Gano v. State ex rel. Robinson,* 10 Ohio St. 237 (1859), involved an unusual situation. In that case, the office of Cincinnati city marshal was abolished. The city of Cincinnati passed an act giving certain duties to the appointed chief of police that had formerly been performed by the city marshal. Robinson was appointed chief of police. Despite the change in law, an election for city marshal was held, and Gano won. Robinson brought an action in quo warranto to oust Gano, because he was performing duties that Robinson was now authorized to perform. Thus, while Robinson was not asking to be made city marshal, he clearly had standing to oust Gano because Gano was acting in an office that no longer existed and some of the duties formerly assigned to the abolished office had been assigned to the office held by Robinson.

**{¶ 38}** Although some of our quo warranto cases may have caused confusion over whether a relator in an R.C. 2733.06 action must show that he has reasonable grounds to believe that he is entitled to the disputed office before the court will address the respondent's entitlement to the office, today's decision makes clear that he must.

————————————

**O'CONNOR, C.J., dissenting.**

{¶ 39} Even though Lucas is not qualified to hold the office of Belmont County sheriff, he will retain it.

{¶ 40} That nonsensical outcome is the result of today's holding by a majority of this court, which completely ignores the question whether Lucas is qualified. Instead, the majority concludes that Flanagan has no standing to bring a complaint for quo warranto, the exclusive remedy to litigate the right of a person to hold a public office, because he cannot show that he is entitled to the office.

{¶ 41} In so doing, the majority chooses to ignore established precedent in which we have held that judgment in a quo warranto case may be rendered on the right of the defendant to hold the contested office and the right of the person alleged to be entitled to hold the office " 'or only upon the right of the defendant, as justice requires.' " *State ex rel. Deiter v. McGuire*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, ¶ 22, quoting R.C. 2733.08; *Gano v. State ex rel. Robinson*, 10 Ohio St. 237 (1859). And neither the majority opinion nor the concurring opinion explains why or offers a compelling analysis that supports the majority's conclusion.

{¶ 42} We are presented with two strands of our established law that are not compatible with one another. One strand, which I would preserve, recognizes that quo warranto will lie, in the interests of justice, to oust an unqualified sheriff or police chief, even if the relator cannot establish entitlement to that office. The other strand, which the majority follows, holds that an unqualified police chief or sheriff may not be ousted from the position unless the relator can establish that he is entitled to the office or that he is acting in good faith and upon reasonable grounds in asserting that he is entitled to the office. It is clear that the majority will rigorously impose the "good faith" and "reasonable grounds" standard in the future, but neither the majority opinion nor the concurring opinion offers any

explanation of what those terms mean in the context of quo warranto or how a relator or any member of the public can satisfy them.

**{¶ 43}** Because the rule now demanded by the majority ignores a key component of our precedent, undermines the morale of our police officers and commanders, endangers the safety of the public, and defies common sense, I strongly dissent.

### ANALYSIS

**{¶ 44}** *Gano*, 10 Ohio St. 237, arose in the wake of the appointment of the first police chief in Cincinnati. In that case, we held:

> In an information in the nature of a *quo warranto*, filed by a claimant of an office against one who is alleged to have usurped the same, the court may, in a proper case, render a judgment of ouster against the defendant to the information, without passing upon the rights of the claimant who files the information.

Even assuming that the rule articulated in *Gano* arose from a more "unusual situation" than any other case that this court has confronted, *see* concurring opinion at ¶ 37, it does not mean that we can, or should, discard its rule of law.

**{¶ 45}** Indeed, the rule from *Gano* is not some archaic remnant. It is but one piece of the much larger body of precedent that the majority ignores.

**{¶ 46}** As we explained a century after *Gano*, R.C. 2733.08 recognizes that a relator's proof may fail in regard to one element yet succeed with respect to the other, and provides that in such instance, "the court, as representative of the state, shall step in and render whatever decision is required by justice." *State ex rel. Ethell v. Hendricks*, 165 Ohio St. 217, 226, 135 N.E.2d 362 (1956). *Ethell* makes clear that "the mere power, granted by statute, to initiate the action neither reduces the controversy to the statutes of a private quarrel *nor divests the state of*

*its historical interest in the persons who hold public office therein*." (Emphasis added.) *Id.* at 225. The majority today refuses to do what is required by justice: allow a relator to maintain a quo warranto action despite his lack of entitlement to the office. This court did just that as recently as 2008.

**{¶ 47}** In *Deiter*, we reiterated the rule in the course of rejecting a city's claim that because the relators could not show they were entitled to become the police chief, they lacked standing to bring a claim for a writ of quo warranto to oust the chief, who had not taken the promotional exam for that office. *Deiter*, 119 Ohio St.3d 384, 2008-Ohio-4536, 894 N.E.2d 680, at ¶ 2, 4, 21-22. In holding that the city's argument lacked merit, we explained:

> R.C. 2733.08 provides, "When an action in quo warranto is brought against a person for usurping an office, the petition shall set forth the name of the person claiming to be entitled to the office, with an averment of his right thereto. *Judgment may be rendered* upon the right of the defendant, and also on the right of the person averred to be so entitled, or *only upon the right of the defendant, as justice requires*." (Emphasis added.) Therefore, as we have long recognized, appellants' potential failure to establish their entitlement to be appointed police chief does not necessarily preclude a writ of quo warranto to oust Police Chief McGuire. *State ex rel. Newell v. Jackson*, 118 Ohio St.3d 138, 2008-Ohio-1965, 886 N.E.2d 846, ¶ 8; *State ex rel. Myers v. Brown* (2000), 87 Ohio St.3d 545, 547, 721 N.E.2d 1053 ("If a relator in a *quo warranto* proceeding fails to establish entitlement to the office, judgment may still be rendered on the issue of whether respondent lawfully holds the disputed office"); *State ex rel. Ethell v. Hendricks* (1956), 165 Ohio St. 217, 226, 59 O.O. 298, 135 N.E.2d

362 ("it is apparent that Section 2733.08 recognizes that a relator's proof may fail in regard to one element and yet succeed with respect to the other, and provides that in such instance the court, as representative of the state, shall step in and render whatever decision is required by justice"); see also *Reed v. Rudnick* (Dec. 13, 1995), Darke App. No. CA 1368, 1995 WL 737911, in which a court of appeals granted a writ of quo warranto to oust a police chief and a writ of mandamus to compel a city's civil service commission to conduct a new promotional examination for the position.

Therefore, the court of appeals erred in dismissing appellants' quo warranto claim.

*Deiter* at ¶ 22-23.

{¶ 48} *Deiter* was not an anomaly. As recently as 2012, we allowed a losing candidate in an election for sheriff, like Flanagan, to maintain a quo warranto case against the winning candidate, like Lucas, without showing that he was entitled to office. *State ex rel. Varnau v. Wenninger*, 128 Ohio St.3d 361, 2011-Ohio-759, 944 N.E.2d 663 ("*Varnau I*"); *State ex rel. Varnau v. Wenninger*, 131 Ohio St.3d 169, 2012-Ohio-224, 962 N.E.2d 790 ("*Varnau II*"). In *Varnau II*, we expressly noted that even if a relator in a quo warranto proceeding fails to establish entitlement to the office, " 'judgment may still be rendered on the issue of whether respondent lawfully holds the disputed office.' " *Varnau II* at ¶ 12, quoting *State ex rel. Meyers v. Brown*, 87 Ohio St.3d 545, 547, 721 N.E.2d 1053 (2000). *See also State ex rel. Delph v. Barr*, 44 Ohio St.3d 77, 80, 541 N.E.2d 59 (1989) (holding in a case challenging an appointment of a police chief that if a relator fails to show entitlement to a contested office, "judgment may be rendered only on the issue of whether respondent lawfully holds the office").

**{¶ 49}** Although the concurring opinion makes much of the fact that *Varnau I and Varnau II* did not discuss standing and that *Deiter* did not mention the good-faith-and-reasonable-grounds standard for standing, the absence of that discussion in those cases does not support the majority's view. Quite the contrary, the fact that we did not impose the requirement in those cases undermines the majority's rigid insistence that we must do so now.

**{¶ 50}** Clearly, this area of law is not as simple as the majority wishes to make it. There are times when it is impossible to know who the rightful officeholder is, even when it is crystal clear that the person currently holding the office is unqualified to do so. In that situation, our law should recognize that justice, the state, and the people of Ohio have an interest in ousting the unrighteous from holding the office of police chief or sheriff. But the rule announced today extinguishes that option.

**{¶ 51}** In an effort to simplify the law,[2] the concurring opinion mocks the notion that "*any* concerned citizen could bring a petition to oust" an unqualified sheriff or police chief. (Emphasis sic.) Concurring opinion at ¶ 30. But if the officeholder is not qualified, why shouldn't he be ousted by the action of a concerned citizen? Rather than treating that concept with derision, we should create a workable rule of law that allows for a citizen who may not be qualified for the position of sheriff or police chief to seek ouster of an unqualified sheriff or police chief. After all, the fact that someone is not qualified to be the police chief or sheriff does not mean that she is not qualified to oust someone else who is unqualified to hold that position or to recognize that she can suffer as a result of

---

[2] The concurring opinion's reliance on *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 23, is curious. *See* concurring opinion at ¶ 30. That case is factually and legally distinguishable. And in *Moore*, this court held that the property owners had standing to bring their claims. Even the carefully selected paragraph of the decision that the concurrence cites does not offer any support for the rule the majority announces.

having an unqualified person govern the safety forces that are charged with protecting her family and property.

{¶ 52} Moreover, by that same analysis, the majority not only precludes "any concerned citizen" from having standing to challenge an unqualified officeholder but also strips standing from any bargaining unit or union of police officers or firefighters or deputies. Such a result is unconscionable.

## CONCLUSION

{¶ 53} The overly restrictive rule announced today, which discards law that has survived for over 150 years, is as unexplained as it is abrupt. The majority simply ignores that precedent without explaining why; without overruling any decision from *Gano* to *Varnau II;* and without acknowledging that the practical result of the majority's decision is that unqualified candidates can assume and retain public offices—including the offices of police and fire chief—so long as no challenger can show entitlement to the office.

{¶ 54} The effect of this decision will most likely not be felt by the justices in the majority. It will be felt by the men and women whom we ask to do the most difficult jobs—our first responders—and the people they protect, in Belmont County and throughout the state.

{¶ 55} Rather than ignore our precedent in this vitally important area of the law, I would adhere to it. And applying it here, I would hold that although Flanagan has not established that he is entitled to the office of Belmont County sheriff, he is entitled to a limited writ of quo warranto ousting Lucas from that position because Lucas is not qualified to hold it under the laws of Ohio.[3] I therefore dissent.

---

[3] Lucas is ineligible to be sheriff because the evidence demonstrates that he does not meet the experience requirements of R.C. 311.01(B)(8)(a) or (b). R.C. 311.01(B). Notably, neither the majority opinion nor the concurring opinion disputes the fact that Lucas is ineligible for the position that he now holds and that he will continue to hold as a result of the majority's analysis today.

18

LANZINGER and O'NEILL, JJ., concur in the foregoing opinion.

_____

Mark E. Landers, for relator.

Lancione, Lloyd & Hoffman Law Office Co., L.P.A., Christopher J. Gagin, and Tracey Lancione Lloyd, for respondent.

_____